UNITED STATES of America, Appellee,

v.

Jessee Dean CAVANAUGH, Appellant.

UNITED STATES of America, Appellee,

v.

Paul Henry CAVANAUGH, Appellant.

UNITED STATES of America, Appellee,

v.

Tayron Dale DUNN, a/k/a
Terry Dunn, Appellant.

UNITED STATES of America, Appellee,

v.

Timothy Sylvester LONGIE,
Jr., Appellant.

UNITED STATES of America, Appellee,

v.

Roger Darrel CHARBONEAU, Appellant.

UNITED STATES of America, Appellee,

v.

Dwayne Allen CHARBONEAU,
Appellant.

UNITED STATES of America, Appellee,

v.

Leonard George FOX, Appellant.

UNITED STATES of America, Appellee,

v.

Loren Michael GREY BEAR, Appellant.

Nos. 90–5157 to 90–5163 and
90–5271 to 90–5274.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1990.

Decided Oct. 7, 1991.

406

Thomas L. Zimney, Grand Forks, N.D., argued, for Jesse Cavanaugh.

Michael F. Daley, Grand Forks, N.D., argued, for Dwayne Charboneau.

David M. Box, Grand Forks, N.D., argued (Gerald J. Haga, Grand Forks, N.D., on brief), for Paul Cavanaugh.

David C. Thompson, Fargo, N.D., argued, for Loren Grey Bear.

M. Daniel Vogel, Fargo, N.D., for Tayron Dale Dunn.

Ronald M. Dosch, Devils Lake, N.D., for Timothy Longie, Jr.

Alan J. Larivee, Grand Forks, N.D., for Roger Darrel Charboneau.

Mark R. Fraase, Fargo, N.D., for Leonard Fox.

Lynn E. Crooks (Dennis D. Fisher and Norman G. Anderson, on brief), Fargo, N.D., for U.S.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

LAY, Chief Judge.

The defendants were originally indicted for first degree murder in violation of 18 U.S.C. § 1111 (1988), assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(f) (1988), and other miscellaneous charges not material here. The defendants, who now appeal, were each found guilty of second degree murder. The jury did not pass upon the assault charge. The jury was discharged and no mistrial was declared on the assault count. On appeal, defendants obtained reversals of their convictions for second degree murder based upon insufficient evidence, *see United States v. Grey Bear*, 828 F.2d 1286 (8th Cir.1987) ("*Grey Bear I*").[1] Thereafter, upon motion of the government, the district court, without a new trial, entered judgments of conviction against each defendant. In this appeal the defendants raise various claims including the argument that double jeopardy bars any retrial on the assault charge. For the reasons stated below, we reverse and vacate the judgments of conviction against each defendant.

## BACKGROUND

The facts have been extensively discussed in this court's first decision, *United States v. Grey Bear*, 828 F.2d 1286 (8th Cir.1987) ("*Grey Bear I*"). On August 28, 1983, Edward Peltier's disfigured body was found lying on a highway on the Devils Lake Indian Reservation. An autopsy revealed he had been killed after being run over by a motor vehicle. The government eventually charged eleven defendants, including these eight who now appeal, with separate counts of first degree murder in violation of 18 U.S.C. § 1111 (1988), and assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(f) (1988). Loren Grey Bear, Jesse Cavanaugh, and John Perez also were charged with witness tampering, and Grey Bear and Leonard Fox were charged with perjury. All the defendants had been drinking throughout the evening with Peltier at a party at the Juarez residence on the reservation. The government's theory was that a series of confrontations between Peltier and various groups of the defendants that took place over a brief time span at various places near the Juarez residence resulted in Peltier being beaten. The government contended that the fights eventually turned into mob action, which escalated to the point that Peltier was murdered when a truck driven by Richard LaFuente ran over him. The government argued that all the defendants participated in the mob action and were liable for aiding and abetting the murder.

The eleven defendants were tried jointly. At the close of the evidence, the trial court instructed the jury on assault resulting in serious bodily injury, first degree murder and the lesser included offenses of second degree murder and voluntary manslaughter. The jury was instructed that if they found a defendant had participated in an assault that resulted in the victim's death, the jury should determine the form of homicide committed. The trial court then instructed the jury not to return a verdict finding a defendant guilty of both homicide and assault resulting in serious bodily injury. *See Grey Bear IV*, 883 F.2d at 1385.

---

1. Other issues litigated appear in *United States v. Grey Bear*, 836 F.2d 1086 (8th Cir.1987) ("*Grey Bear II*") (denying rehearing by the panel); *United States v. Grey Bear*, 863 F.2d 572 (8th Cir.1988) (en banc) ("*Grey Bear III*"); *United States v. Grey Bear*, 883 F.2d 1382 (8th Cir.1989) ("*Grey Bear IV*"), *cert. denied*, 493 U.S. 1047, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990).

The jury convicted LaFuente of first degree murder, Maynard Dunn of assault resulting in serious bodily injury, and the other nine defendants of second degree murder. The jury also convicted the defendants charged with perjury and witness tampering of those offenses.

On appeal, this court found sufficient evidence to uphold the first degree murder conviction of LaFuente and the second degree murder conviction of Perez. The court found insufficient evidence to sustain the convictions for the other eight defendants found guilty of second degree murder as well as insufficient evidence to sustain Maynard Dunn's assault conviction. The court also held that prejudicial misjoinder required retrial of LaFuente on the murder charge and three other defendants on the perjury and witness tampering charges. *Grey Bear I*, 828 F.2d at 1293–99. Following the court's decision, the government filed a petition for rehearing by the panel. The government argued that a judgment of conviction on the assault count should be entered against the eight defendants whose convictions were vacated because of insufficient evidence of second degree murder, or in the alternative a new trial should be ordered on the assault charge. In support of its motion, the government cited cases in which appellate courts had found insufficient evidence for the greater offense but sufficient evidence to sustain a guilty verdict on the lesser included offense and ordered conviction entered on the lesser included offense. Pointing out that the government had neither briefed nor argued the sufficiency of the evidence on the assault count in their original brief, the panel refused to grant a rehearing, but stated that the government could raise the argument before the district court. *Grey Bear II*, 836 F.2d at 1087.

The government then petitioned the court en banc *only* as to the panel's misjoinder holding. The government did not challenge the initial panel's finding on the insufficiency of the evidence of second degree murder. The en banc court divided five to five on the misjoinder issue, resulting in affirmance of the district court's decision that joinder was proper.[2]

The government next requested the district court to enter summary conviction on the assault charge against the eight defendants whose second degree murder convictions had been vacated in *Grey Bear I*. The government conceded that the fatal injuries caused by the automobile running over Peltier could not constitute the serious bodily injury of the assault charge, but argued that the jury found that the assault and beating before the run-over occurred caused serious bodily injury apart from the fatal injuries. In the alternative, the government asked for a new trial on the assault charge against the eight defendants. Without reviewing the evidence, the district court held that assault resulting in serious bodily injury was a lesser included offense of murder, and that under the trial court's instructions the jury necessarily found the defendants guilty of assault resulting in serious bodily injury before finding them guilty of murder. The court entered summary conviction against the defendants on Count II of the original indictment, assault resulting in serious bodily injury. Mem. Op. (D.N.D. Jan. 6, 1990). We reverse.

## ANALYSIS

On appeal, the defendants argue that the district court lacked authority to enter summary convictions, and that even if the court possessed such authority, it was improper in this situation. The defendants also contend that retrial on the assault charge is barred under double jeopardy principles. Alternatively, the defendants each contend that the evidence at trial was insufficient as a matter of law to support

**2.** Because of the en banc disposition, Grey Bear, Perez, and Jesse Cavanaugh stood convicted of perjury and witness tampering, Fox and Grey Bear with perjury, LaFuente with first degree murder, and Perez with second degree murder. They all joined in a subsequent appeal to a panel of the court to resolve several issues not decided in the first panel opinion. Among other things, the court held that the jury instructions and closing arguments were proper and affirmed each of their convictions. *Grey Bear IV*, 883 F.2d at 1386, 1390.

either entry of summary conviction or a new trial on the assault charge.[3]

## I. SUMMARY CONVICTION

It is well established if an appellate court deems the evidence insufficient as a matter of law to support a jury's guilty verdict on a greater offense but finds the evidence sufficient to support a conviction on a lesser included offense, it may enter a judgment of conviction on the lesser included offense. *See, e.g., United States v. Franklin,* 728 F.2d 994, 1000–01 (8th Cir.1984); *United States v. Ellsworth,* 647 F.2d 957, 965 (9th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2008, 72 L.Ed.2d 465 (1982); *DeMarrias v. United States,* 453 F.2d 211, 215 (8th Cir.1972); *see also Morris v. Mathews,* 475 U.S. 237, 247, 106 S.Ct. 1032, 1038, 89 L.Ed.2d 187 (1986) ("[W]here it is clear that the jury necessarily found that the defendant's conduct satisfies the elements of the lesser included offense, it would be incongruous always to order yet another trial...."). The rationale for such a procedure is clear. A greater offense contains all of the elements of a lesser included offense, plus something more. When a jury convicts on the greater offense, it implicitly has found the defendant's conduct also violated the lesser included offense. Therefore, when a reviewing court sets aside a conviction for the greater offense because of insufficient evidence, it can evaluate whether the evidence was sufficient for the jury to convict on the lesser included offense. If the evidence was in fact sufficient on the lesser charge, entry of judgment and appropriate sentencing on that charge is proper.

In this case, the government asked the district court to enter conviction against these eight defendants on the charge of assault resulting in serious bodily injury. In its decision entering conviction on the

assault count, the district court stated that assault resulting in serious bodily injury is a lesser included offense of murder, but did not engage in any analysis of the record as to whether there existed sufficient evidence to sustain the convictions. Mem. Op. at 4 (D.N.D. Jan. 6, 1990). The initial issue we must consider is whether assault resulting in serious bodily injury is a lesser included offense of murder.

### A.

Our decision on this issue is guided by the Supreme Court's recent decision in *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Under Federal Rule of Criminal Procedure 31(c), a defendant may be convicted of a lesser included offense of the one charged.[4] It is well established that if the evidence would permit a jury to find a defendant guilty of a lesser included offense, the defendant is entitled to an instruction on that offense. *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). For years, courts were divided over the test to use in deciding whether one offense is a lesser included offense of another under Rule 31(c). Some courts had used the "inherent relationship" test, in which the court looked at the two offenses in the context of the evidence introduced in the particular case before it. *See, e.g., United States v. Pino,* 606 F.2d 908, 916 (10th Cir.1979). In *Schmuck,* the Court rejected this test and held that the proper test is the "elements" test. *Schmuck,* 489 U.S. at 716, 109 S.Ct. at 1450. Under this test, an offense is a lesser included offense if the elements of the offense form a subset of the elements of the charged offense. Thus, when the lesser offense requires an element not required for the greater of-

---

**3.** We need not pass on defendants' alternative argument in which they challenge the sufficiency of evidence adduced in the first trial. Even if evidence exists to find that each defendant inflicted an assault resulting in severe bodily injury, a summary conviction cannot be sustained for the reasons we discuss below. Second, if the government could otherwise retry the defendants consistent with double jeopardy

principles, we would not pass upon the sufficiency of the evidence at the first trial. *See Richardson v. United States,* 468 U.S. 317, 326, 104 S.Ct. 3081, 3086–87, 82 L.Ed.2d 242 (1984).

**4.** Rule 31(c), in relevant part, states: "The defendant may be found guilty of an offense necessarily included in the offense charged...."

fense, it is not a lesser included offense. *Id.*

■ The government concedes in its brief that under the elements test approved in *Schmuck*, assault resulting in serious bodily injury is *not* a lesser included offense of murder. Govt.Br. at 4. The government reasons that not every murder necessarily involves an assault, as when a victim is murdered by poisoning. App. at 321. More significantly, it is clear that the element of serious bodily injury is not a part of the elements of murder.[5] The government concedes that evidence of serious bodily harm must exist independent of and separate to Peltier's death. *See infra* pp. 410–11. Therefore, assault resulting in serious bodily injury contains different elements than murder and cannot be a lesser included offense under the elements test. Thus, we hold the district court erred in finding that assault resulting in serious bodily injury under 18 U.S.C. § 113(f) was a lesser included offense of murder under 18 U.S.C. § 1111.

### B.

■ Although acknowledging that assault resulting in serious bodily injury is not a lesser included offense of murder in this case, the government nevertheless contends that the district court's entry of conviction on the assault charge was proper because the jury necessarily had to find the defendants guilty of the assault charge before finding them guilty of murder. The government's argument is based upon its requested jury instruction number 34 given at the trial of these defendants. Instruction 34 stated in relevant part:

If the jury unanimously finds that an assault occurred and that the assault inflicted serious bodily injury on the victim as a result of which the victim died, the crime of assault merges with some form of homicide.... If the jury determines that a defendant committed an assault on the victim, which resulted in the victim's death, the jury must then determine the form of homicide, if any, that the defendant may have committed.... If you have found a defendant guilty of the charges made in Count One [the murder count], or any lesser included offense thereof, you cannot find that defendant guilty of the charge alleged in Count Two of the indictment [the assault count].

The government contends that under this instruction, the jury first must have found the defendants guilty of assault resulting in serious bodily injury. The government concludes that the district court was correct to enter conviction against the defendants on this charge.

We reject the government's argument for several reasons. Initially, we are not convinced that the jury necessarily first found the defendants guilty of an assault resulting in serious bodily injury before finding them guilty on the murder count. The main purpose behind Instruction 34 was to tell the jury that it could not convict the defendants of both the homicide and assault charges. *Grey Bear IV*, 883 F.2d at 1386. The instruction did not say the jury must initially find the defendants guilty of assault resulting in serious bodily injury (i.e. a separate non-fatal injury) before finding them guilty of murder.

The government agrees that "serious bodily injury" is not proven by Peltier's resulting death. However, neither the court's instructions nor the prosecution's arguments explained this fact to the jury. Thus, the lay jury easily could have found that the assault on Peltier when the truck was driven over him was assault resulting

---

5. Both parties agree that serious bodily injury under section 113(f) means something more than slight bodily injury. It means bodily injury of a grave and serious nature. The jury is to apply their common understanding of the term "serious bodily injury." *United States v. Moore,* 846 F.2d 1163, 1166 (8th Cir.1988). In *United States v. Johnson,* 637 F.2d 1224 (9th Cir.1980), the court stated that in deciding whether there was serious bodily injury, the jury should consider "whether the victim suffered extreme physical pain, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, organ, or mental faculty, protracted unconsciousness, and significant or substantial internal damage (such as broken bones)." *Id.* at 1246.

in his death. In fact, instruction 37, which mainly was to explain the concept of joint action and aiding and abetting, states:

> With regard to an assault which results in bodily injury *or* death, it is not necessary that the blows struck by any one defendant be sufficient in and of themselves to cause serious bodily injury *or* death.

App. at 199 (emphasis added). Instruction 37 uses the phraseology "serious bodily injury or death" three more times. As a consequence, the jury may have only considered the assault upon Peltier as a result of the truck running over him and never considered whether the alleged beatings themselves caused serious bodily injury.

There is no question that Peltier died as a result of the truck running over him. The government's theory was based in part on continuous felonious beatings which culminated in Peltier's death when the vehicle was driven over him as he lay prone on the highway. The jury was instructed that an assault resulting in serious bodily injury was "any willful attempt or threat to inflict injury upon the person of another with an apparent present ability to do so."[6] As we discussed in our initial opinion, there was no evidence of a conspiracy or a scheme to kill Peltier implicating all of the defendants in the run-over. *Grey Bear I*, 828 F.2d at 1296–97. LaFuente and Perez were convicted of the homicide caused by running over Peltier with the truck. A reasonable interpretation of the verdict under the court's instructions is that the jury may have found all the defendants guilty of an assault occurring when LaFuente drove the vehicle at Peltier and over him. Clearly the attempt to inflict injury on Peltier by the attempted battery and proof of battery by running over him with the truck was an assault. The record established sufficient evidence to sustain homicide verdicts against only LaFuente and Perez. Accord-

ingly, this court vacated the murder convictions against the other defendants. In doing so, this court exonerated those defendants from the charge that they had committed any assault that contributed to or caused Peltier's death. The record was completely devoid of any evidence that the present defendants participated in beatings which resulted in Peltier's death. We stated that the convictions stemmed "from the ever present danger of assuming the complicity of all in attendance whenever group activity is involved" and "the jury's tendency to find guilt by association." *Grey Bear I*, 828 F.2d at 1297 (citation omitted). Thus, under instruction number 34, the jury erroneously convicted the defendants of second degree murder resulting from the assault and run-over. Because the jury could have found that the assault was running over Peltier with the vehicle, there is no certainty that it also found that the defendants *independently* assaulted Peltier and inflicted serious bodily injury before the fatal injuries resulting from the run-over by the LaFuente vehicle.

Although under the government's theory of the case the jury necessarily found the defendants had committed an assault on Peltier, under the explicit language of instruction number 34, the jury did not have to find that any assault *caused serious bodily injury* before finding the defendants guilty of murder. Further, the government clearly focused on the homicide charge. The government's closing argument, spanning 120 pages in the transcript, repeatedly emphasized the murder charge and referred to the assault charge only once. App. at 290. Given all of these circumstances, it is too tenuous to accept the argument that the jury necessarily must have found the defendants guilty of assault resulting in serious bodily injury.

A second reason for rejecting the government's position is that all cases approving

---

**6.** The full text of instruction 32 reads:

> Assault is defined as any willful attempt or threat to inflict injury upon the person of another with an apparent present ability to do so. Any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm constitutes an assault.

> An assault may be an attempted battery and proof of battery will support a charge of assault. Any intentional use of force upon the person of another is a battery. An assault may, however, be committed without actually touching, striking, or doing bodily harm to the person of another.

the entry of a judgment of summary conviction have done so *only* on lesser included offenses. The government's argument for summary conviction is based on the implicit reasoning that there exists an inherent relationship in this case between the murder charge and the assault charge because of the government's theory of the case, i.e., that the assault count merged into the murder count. This theory was incorporated in the government's requested instruction 34. We deem this reasoning too closely related to the inherent relationship test rejected by the Supreme Court in *Schmuck.*

The case law approving entry of conviction on lesser included offense charges is logical because there is no guesswork about what the jury must have concluded. Because the lesser offense necessarily contains a subset of the elements of the greater offense, it is appropriate and "common sense" to order conviction on the lesser charge when the evidence supports the lesser offense. In the present case, assault resulting in serious bodily harm is a separate count and was not an element of the murder charge.

We hold that the district court erred in entering summary conviction against these defendants for assault resulting in serious bodily injury.

## II. NEW TRIAL AND DOUBLE JEOPARDY

The government contends that even if the district court cannot enter conviction on the assault charge, it should be able to retry the defendants on the assault charge contained in Count II of the original indictment because of continuing jeopardy. The government now asserts that prior to the run-over by the LaFuente vehicle which caused Peltier's death, these defendants beat Peltier and caused serious bodily injury separate from any injuries occurring during the run-over.

In contrast, the defendants claim that jeopardy terminated once the original jury was dismissed without passing on the guilt or innocence of the defendants on the assault charge. They point out that the trial judge did not declare a mistrial on Count II. *Cf. Richardson v. United States,* 468 U.S. 317, 325–26, 104 S.Ct. 3081, 3086–87 (1984) (holding that when judge declares mistrial after jury acquits on one charge but deadlocks on other charges, retrial may be had on deadlocked charges). They contend that it was the government's deliberate strategy that led to the jury not returning a verdict on the assault count, and because the government already had one full and fair opportunity to convict them of this charge, it would be double jeopardy to put them through yet another trial on this count. They also argue that permitting the government a new trial on the assault count unfairly allows the government to change its trial strategy and argue a different theory of the case.

### A.

In its brief on appeal, the government explains that it sought and received from the grand jury a separate count for assault resulting in serious bodily injury (Count II) because there were two possible interpretations of the events leading to Peltier's death. The first was that there was one continuous criminal act of an assault culminating in murder. The second was that there were two distinct crimes—murder and a separate felonious assault. Govt.Br. at 5. If there was one criminal act, then the theory of merger[7] conceivably could apply and double jeopardy would bar punishment for both felonious assault and murder because double jeopardy protects against multiple punishment for the same offense. *See Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).[8] If the alleged offenses were committed in

---

7. This court has explained that the common law doctrine of merger no longer exists, but the term is used to refer to the Double Jeopardy Clause prohibition against punishing a person twice for the same act or offense. *United States v. Belt,* 516 F.2d 873, 874 n. 7 (8th Cir.1975).

8. In proposing instruction 34 directing merger between the murder and assault counts, the prosecution evidenced its belief that double jeopardy ultimately would bar punishment for both murder following an assault and assault resulting in serious bodily injury. Whether multiple punishments for the same act are pro-

two distinct transactions, then the original jury conceivably could convict under both counts of the indictment. The government is now claiming that the second view of the events is the correct one, i.e., that there were two separate and distinct crimes, the beating of Peltier which constituted assault resulting in serious bodily injury and the run-over by the LaFuente truck which constituted murder.

We find that the government at trial abandoned any theory that there were two separate and distinct criminal acts. Throughout the trial, the government argued that this was a case of escalating mob violence that resulted in Peltier's murder. Govt.Br. at 7. The prosecution contended that the series of confrontations in which some of the defendants punched and kicked Peltier all was one part of a continuous act which culminated in murder. By the time of the government closing, the prosecution had completely abandoned a theory that any assault was separate from the murder. The government's closing fills over 120 pages of transcript and contains *only a single reference to the separate assault charge* in Count II. Consider these statements from the closing:

> "Even if there was no beating, *all one series of events that lead to his death,* they wore him down, they exhausted the man, couldn't defend himself."

Govt. Closing p. 61 (emphasis added).

> "All three crimes, first, second degree murder and manslaughter, voluntary manslaughter, all are homicide. *What the government has proven in the case, as I said, is homicide.* Very simply, the death of Eddie Peltier. Death by beating, first to wear him out, then to coup de grace, *running him over with a GMC Sprint....* May not be murder one, premeditation, I don't know, and I don't care, *but it's malice, it's murder and they did it....* I urge verdicts of guilty for all of these Defendants of at least second degree murder...."

Govt. Closing pp. 18, 125, 127 (emphasis added).

The government presented this case as one in which the alleged assaults before the run-over were an integral part of the actual murder. It is clear that this was the only way the government could establish most of the defendants' culpability for the murder. The government admits this crucial fact in its brief. Govt.Br. at 8.[9] The government's theory also is revealed by what this court has already described as its "prejudicial argument" during closing that "if one is guilty, it's a pretty fair conclusion that all are guilty." *See Grey Bear I,* 828 F.2d at 1297. Finally, the government proposed Instruction 34, which instructed the jury on the theory that the assault and the murder counts merged, reflecting its theory that the assault and the murder were part of the same continuous transaction.[10]

## B.

Having concluded that the prosecution's deliberate action resulted in the trial termi-

hibited by the Double Jeopardy Clause depends on whether the legislature intended multiple offenses and punishments for the same course of conduct, *see Johnson,* 467 U.S. at 499, 104 S.Ct. at 2540–41, as determined by the test announced in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

The Court in Johnson noted that the Double Jeopardy Clause does not prohibit the jury from considering multiple charges for the same offense, only multiple punishments. 467 U.S. at 499; *see also Forsberg v. United States,* 351 F.2d 242, 245 (9th Cir.1965). Therefore, it appears that the prosecution in this case did not have to merge the murder and assault counts but could have let the jury return verdicts on both counts and let the court decide whether the defendants could be punished separately for both offenses consistent with double jeopardy principles. Do-

ing so would have avoided the problem in this case of the jury being discharged without passing upon the guilt or innocence of the defendants on all counts of the indictment.

9. The government states that "the culpability of each defendant [for the murder] rather was only established by his individual willful participation in the continuing assault of Eddie Peltier...." Govt. Br. at 8.

10. We do not suggest that the instruction, per se, was an incorrect statement of the law. Of course, mere "instructional error" would normally pose no double jeopardy bar to a retrial. We emphasize, however, that the instructions submitted by the prosecution and adopted by the trial court reflected the government's particular theory of the case.

nating without a verdict on the assault charge, we must determine whether the principles of double jeopardy now bar the government from retrying the defendants on that count. We conclude that double jeopardy bars retrial under these circumstances.

■■■] At its core, the Double Jeopardy Clause of the Fifth Amendment affords a defendant protection against a second prosecution for the same offense after acquittal or after conviction, and protection against multiple punishments in the same proceeding for the same offense. *Ohio v. Johnson,* 467 U.S. 493, 498, 104 S.Ct. 2536, 2540 (1984); *United States v. Luskin,* 926 F.2d 372, 377 (4th Cir.1991). Although this is the "primary purpose of the Double Jeopardy Clause," the Court has emphasized that there is "the separate but related interest of a defendant in avoiding multiple prosecutions even where no final determination of guilt or innocence has been made." *United States v. Scott,* 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978). Underlying this protection is the belief that the government may not repeatedly inflict on the defendant the burden of a trial. *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). The Double Jeopardy Clause also "affords a criminal defendant a valued right to have his trial completed by a particular tribunal," although that right is not absolute. *Oregon v. Kennedy,* 456 U.S. 667, 671–72, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982).

■■ The government contends that double jeopardy principles do not bar retrial because of continuing jeopardy.[11] Jeopardy for a charged offense is continuing "where criminal proceedings against an accused have not run their full course." *Price v. Georgia,* 398 U.S. 323, 326, 90

S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970). For instance, it has long been recognized that reversal for trial error does not terminate jeopardy and the defendant may be retried. *See, e.g., Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).[12] Similarly, when a judge declares a mistrial and discharges a jury over the objection of the defendant, the defendant may be retried upon a showing of "manifest necessity." *Wade v. Hunter,* 336 U.S. 684, 690, 69 S.Ct. 834, 837–38, 93 L.Ed. 974 (1949).

This is not a situation like *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), in which the government sought a successive prosecution under a new indictment that required the defendant to be re-prosecuted for conduct for which the defendant already had been tried. Although *Grady* is not controlling, many of the same concerns apply here. At least theoretically, the same conduct of the alleged assaults and beatings must be proven as adduced in the initial trial. In *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the court eloquently observed:

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 187–88, 78 S.Ct. at 223–24. The Court in *Grady* recently extended this theme:

> in violation of *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 2093 (1990); *see McIntyre v. Trickey,* 938 F.2d 899 (8th Cir.1991) (interpreting *Grady* as bar to successive prosecution).

---

**11.** The government concedes that had there been no separate count charging assault resulting in serious bodily injury, it could not now indict and try these defendants for that charge because the prosecution would violate the rule of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180 (1932), and the government would be proving conduct constituting an offense for which the defendants have already been tried,

**12.** Reversal for trial error does not terminate jeopardy and permits retrial, but reversal for insufficiency of the evidence terminates jeopardy and does not permit retrial. *Id.*

Multiple prosecutions also give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charge. *See, e.g., Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982) (noting that the Double Jeopardy Clause "prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction"); *Ashe v. Swenson,* 397 U.S. 436, 447, 90 S.Ct. 1189, 1196, 25 L.Ed.2d 469 (1970) (the State conceded that, after the defendant was acquitted in one trial, the prosecutor did, at a subsequent trial, "what every good attorney would do—he refined his presentation in light of the turn of events at the first trial"); *Hoag v. New Jersey,* 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958) (after an alleged robber was acquitted, the State altered its presentation of proof in a subsequent, related trial—calling only the witness who had testified most favorably in the first trial—and obtained a conviction). Even when a State can bring multiple charges against an individual under *Blockburger,* a tremendous additional burden is placed on that defendant if he must face each of the charges in a separate proceeding.

*Grady,* 495 U.S. at ——, 110 S.Ct. at 2091–92.

The distinction of the present case from *Grady*—that here both offenses were charged separately in the original indictment—should not, under the circumstances existing, obviate the double jeopardy concerns of *Green* and *Grady.* If assault resulting in serious bodily injury were a lesser included offense of the murder count, resentencing could be summarily implemented on the lesser count without placing the defendants in double jeopardy. *See Morris v. Mathews,* 475 U.S. 237, 247, 106 S.Ct. 1032, 1038 (1986). For reasons discussed earlier, however, the assault allegedly proven cannot under the court's instructions become an accepted proven fact of the original verdict. Furthermore, the failure of the original jury to return a verdict on the assault count and the rea-

sons it did not, are the critical factors barring retrial.

In *Green,* the court faced an analogous concern when a jury was given the choice by the court's instructions of convicting for first degree murder or alternatively for second degree murder. The jury found the defendant guilty of the lesser offense and the jury was dismissed without returning any "express" verdict on the first degree charge. As the Court observed, "[the jury] was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so." 355 U.S. at 191, 78 S.Ct. at 225. As Justice Black stated, "[Green] was forced to run the gauntlet once on that charge and the jury refused to convict him." *Id.* at 190, 78 S.Ct. at 225.

No doubt the government would attempt to distinguish *Green* by arguing that in *Green* the jury convicted on the *lesser* charge, whereas in this case the jury convicted the defendants of the *greater* charge (second degree murder). However, in the particular circumstances of this case, we find this distinction not material to our discussion of the interests double jeopardy is designed to protect. First, as discussed, this is not a case of a jury implicitly finding the defendant guilty of a lesser included offense which contained the same elements as the greater offense. Notwithstanding the government's contention at trial and the trial judge's mistaken acquiescence in this contention, assault resulting in serious bodily injury and second degree murder are completely separate offenses. As the Court in *Green* observed:

It is immaterial whether second degree murder is a lesser offense included in a charge of felony murder or not. The vital thing is that it is a distinct and different offense. If anything, the fact that it cannot be classified as a "lesser included offense" under the charge of felony murder buttresses our conclusion that Green was unconstitutionally twice placed in jeopardy. American courts have held with uniformity that where a defendant is charged with two offenses, neither of which is a lesser offense in-

cluded within the other, and has been found guilty on one but not the second he cannot be tried again on the second even though he secures reversal of the conviction and even though the two offenses are related offenses charged in the same indictment.

355 U.S. at 194 n. 14, 78 S.Ct. at 227 n. 14.

We also anticipate the government's contention that it would be inconsistent for the jury to acquit the defendants of assault resulting in serious bodily injury and yet find the defendants guilty of "assault resulting in death." We disagree. As discussed, the jury could reasonably equate the defendants' assault on Peltier as being the impending injury resulting in death from the truck being driven at Peltier while he lay on the road. This is all instructions 34 and 37 required. The jury could have found the defendants innocent of the separate charge of assault (by the alleged beatings) resulting in serious bodily injury, and yet under the government's theory of the case, as well as the court's instructions, the jury could have found all of the defendants implicated in the assault and run-over by the LaFuente vehicle.

We also reject the government's request for a retrial because of the manner in which the trial court and the government chose to proceed in the original trial. Upon the return of the verdict, the court discharged the jury without it reaching a verdict on the assault charge. *Cf. Green,* 355 U.S. 184, 190–91, 78 S.Ct. 221, 225 (1957).[13]

The jury failed to do so because of the government's strategy in abandoning the assault count in attempting to obtain a second degree murder conviction.[14]

■■■ "Questions regarding retrial after the discharge of a jury without a verdict are not to be decided by a rigid application of mechanical formulae." *United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034, 1043 (3d Cir.1975). In this case, the trial ended without a factual determination of guilt or innocence on the assault charge, and we look closely at precisely why the trial terminated without the jury reaching a verdict on the charge. Had the trial terminated because of a deliberate election by the defendant, double jeopardy would not bar retrial. *See United States v. Scott,* 437 U.S. 82, 96, 99, 98 S.Ct. 2187, 2196, 2198 (1978). In contrast, when the trial terminates without a determination of guilt or innocence on a charge as a result of a deliberate, tactical decision by the prosecution, we examine whether the interests protected by double jeopardy principles would be offended by a retrial.

*Saylor v. Cornelius,* 845 F.2d 1401 (6th Cir.1988), illustrates this approach. In *Saylor,* the defendant was indicted on one count of murder, which encompassed theories of culpability as a principal, as an accomplice, and as a conspirator. The jury was instructed only on the theory of conspiracy to commit murder despite considerable evidence showing culpability as an ac-

13. The Court observed in *Green:*
In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder. But the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. *For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent.* Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834.

*Green,* 355 U.S. at 190–91, 78 S.Ct. at 225 (footnote omitted) (emphasis added).

14. The government's reliance on *United States v. Gooday,* 714 F.2d 80 (9th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 884 (1984), is misplaced. In *Gooday,* the jury acquitted the defendant of the greater charge, but could not reach a verdict on the two lesser included offense charges. The trial judge declared a mistrial and the government sought a retrial on the deadlocked charges. The Ninth Circuit held that double jeopardy would not bar retrial. *Id.* at 83. In this case, however, the judge did not declare a mistrial. Instead, the defendants were deprived of their right of having the original jury consider their guilt or innocence on the assault charge because of the way the government chose to present the case.

complice. The jury convicted on the conspiracy theory, but the state appeals court reversed for insufficient evidence. *Id.* at 1402. Relying on the basic principles of double jeopardy, the Sixth Circuit on habeas review held that because the prosecution acquiesced in the jury instructions it was the party responsible for the deliberate action which terminated the trial without a verdict on the particular theory with which it had charged Saylor and upon which it now sought retrial. The court then held that double jeopardy barred retrial. *Id.* at 1407–08; *see also Sizemore v. Fletcher,* 921 F.2d 667, 673 (6th Cir.1990) (double jeopardy may bar retrial if trial terminates for reasons of the prosecution's making, citing *Saylor.*).

 In this case, these defendants underwent the burden and anxiety of a trial that the district court judge described as "long, expensive and divisive." Mem.Op. at 4. (D.N.D. Jan. 6, 1990); *cf. Green,* 355 U.S. at 187, 78 S.Ct. at 223.

As the *Saylor* court stated: "We see no reason why the prosecution should be allowed to try a defendant again merely because it did not realize during the trial that the only theory of liability established by the evidence had not been [presented] to the jury." *Saylor,* 845 F.2d at 1408. The court was worried that otherwise, the government could "indict on several counts or theories, present evidence on each of them, and then go to the jury only on selected ones, in effect holding the others in reserve for a subsequent or improved effort." *Id.* In the situation in this case, as in *Saylor,* "the prosecution should bear the burden of the aborted outcome." *Id.* at 1407.

We hold that principles of double jeopardy, which serves "a constitutional policy of finality for the defendant's benefit," *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality), bars retrial for the assault charge when the government's deliberate trial strategy caused the first trial to terminate without the jury passing upon that charge. The prosecution could have presented the original jury with the theory it now wishes to advance on retrial. The defendants in this case should not be required to "'run the gauntlet' a second time." *Ashe v. Swenson,* 397 U.S. 436, 446, 90 S.Ct. 1189, 1195 (1970) (quoting *Green,* 355 U.S. at 190, 78 S.Ct. at 225).

## CONCLUSION

The judgment of the district court is reversed and vacated with directions to dismiss the pending indictments.

JOHN R. GIBSON, Circuit Judge, concurring in the result.

I concur in the result the court reaches today and write separately because I reach that result by a somewhat different path. I also have some concerns with some of the court's statements, but in view of the result we reach, there is little to be gained by discussing these specific questions.

I first agree that it is abundantly clear that assault is not a lesser included offense of murder. The instructions given to the jury in this case clearly referred to second degree murder and voluntary manslaughter as lesser included offenses of first degree murder. The instructions make no reference to assault as a lesser included offense. Under *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), the elements of assault are simply "not a subset of any element" of murder. Thus, the district court erred in considering assault a lesser included offense of murder and imposing sentence for the crime of assault.

The government tried the case on the theory that the assault led to the murder. Instruction 34 plainly told the jury that if it found an assault occurred which inflicted serious bodily injury as a result of which the victim died, then the jury must determine the form of homicide that the defendant may have committed. The court instructed the jury that it could not return a guilty verdict on both the homicide and assault. I think it abundantly clear that in leaving blank the verdict form for assault, the jury followed this instruction. In convicting Maynard Dunn of assault and leav-

ing blank the verdict form for homicide, the jury's understanding of this instruction is underscored.

The problem that is apparent is that the assault instruction (No. 31) required only a finding of the elements of that crime, and did not include the element that the assault resulted in the victim's death. The indictment and instructions charged assault, which might or might not have resulted in the death of Peltier. The jury could have found that there was an assault but that the assault did not result in Peltier's death. In reaching such a conclusion, the jury could have entered guilty verdicts on the assault charges, and pursuant to Instruction 34, not guilty verdicts on the homicide charges. On the other hand, the jury could have acquitted on the assault charges finding that the assault did not result in Peltier's death, and thus, the government failed to prove the elements of assault. In essence, the jury could have decided the issue of assault, but Instruction 34 foreclosed their consideration of the possibilities, either guilt or innocence, if they believed that the assault did not result in Peltier's death.

Accordingly, the jury was foreclosed from considering one of the issues which had been charged and tried. This is the very shortcoming that was addressed in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), and *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir.1988). The instructions, specifically Instruction 34, failed to allow the jury to consider an assault that did not result in Peltier's death. This failure created the same problem existing in *Green* and *Saylor*. Double jeopardy thus bars retrial.

A postscript is also in order. If we were to conclude that the assault charges should be retried, we would face the fact that the district court judge sentenced all of the defendants whose second degree murder convictions were reversed to the time they had spent incarcerated before the reversal of their convictions, namely twenty months. If we determined that double jeopardy did not bar retrial, I cannot believe that after a jury verdict of guilt of

assault, the district judge would sentence other than he did. A different decision from that reached today would only result in a lengthy and difficult trial with the net result being the same.

Accordingly, I concur in the result the court reaches but for these different reasons I have articulated above.