**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 16, 2009

Charles R. Fulbruge III
Clerk

No. 08-20038

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JAMES A BROWN; ROBERT S FURST;
DANIEL BAYLY

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, WIENER, and SOUTHWICK, Circuit Judges.

REAVLEY, Circuit Judge:

The defendants in this interlocutory appeal, all former employees of Merrill Lynch, appear before us for the second time in connection with charges that they conspired to defraud the Enron Corporation and its shareholders by agreeing with Enron employees to "park" assets with Merrill Lynch in order to artificially enhance Enron's 1999 earnings. The assets at issue were power-generating barges located off the coast of Nigeria that Merrill Lynch allegedly agreed to buy from Enron based on a secret side-deal that Enron would buy the barges back in six months. After a jury convicted the defendants in a general verdict for *inter alia* conspiracy and substantive wire fraud offenses, we reversed

those convictions on the legal ground that the circumstances of the transaction were not covered by the honest services theory of wire fraud, which was one of three means of fraud charged in the indictment. *See United States v. Brown (Brown I).*[1] The Government then sought to re-try the defendants without the honest services theory. The defendants now appeal from the district court's denial of their motion to dismiss the indictment on grounds of double jeopardy. We AFFIRM the district court's judgment.

## I.

The underlying facts of the alleged fraudulent transaction between Enron and Merrill Lynch are recounted in great detail in *Brown I.* Briefly stated, Enron's Asia/Pacific/Africa/China (APACHI) energy division was under pressure in 1999 to sell assets in order to meet earnings targets but had been unsuccessful in finding a buyer for the Nigerian barges, and so it turned to Merrill for help. As this court wrote:

> Merrill agreed to invest $7 million to purchase equity in the barges so that Enron could record $12 million in earnings and meet its forecasts. The Government contended, however, that the sale was a sham because Enron executives orally promised Merrill a flat fee of $250,000 and a guaranteed 15% annual rate of return over the six-month period of Merrill's investment; Enron executives allegedly promised that Enron or an affiliate would buyback Merrill's interest in the barges if no third party could be found. Such a buyback agreement, the Government contended, rendered Merrill's interest in the barges risk-free, meaning that Enron's accounting of the deal as a sale rather than a lease was false.[2]

Enron approached Merrill in December 1999 and recorded the barge deal at the end of that year after multiple discussions among the defendants and Enron employees. Merrill was apparently willing to participate because of the

---

[1] 459 F.3d 509, 517 (5th Cir. 2006).

[2] *Id.* at 513.

opportunity to foster good relations with Enron and because Enron management, including C.F.O. Andrew Fastow, purportedly gave verbal assurances that Merrill would be taken out of the deal within six months for a fixed rate of return on the investment. Enron allegedly paid Merrill an "advisory fee" of $250,000 even though Merrill did not provide any advisory services. In late June 2000, Merrill sold the barges through arrangements from Enron to a third company controlled by Fastow for just over $7.5 million, representing the promised six-month rate of return. Merrill thus earned $775,000 as a result of its assistance to Enron, which was able to inflate and misstate its earnings report.[3]

The Government charged the defendants, along with several others, in a Third Superseding Indictment with violating the wire fraud statutes under 18 U.S.C. §§ 1343[4] and 1346[5] by scheming to defraud both Enron and its shareholders. Count one charged a conspiracy while counts two and three alleged substantive offenses.[6] In *Brown I* we identified three objects alleged for

---

[3] *See id.* at 514–16.

[4] The statute provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

[5] "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

[6] Count one alleged in relevant part that the defendants:

> conspired to: (a) knowingly and intentionally devise a scheme and artifice to

the conspiracy: (1) to commit wire fraud by fraudulent deprivation of Enron's money or property (the "money or property charge"); (2) to commit wire fraud by fraudulent deprivation of the intangible right to honest services (the "honest services charge"); and (3) to falsify Enron's books and records (the "books and records charge").[7]

The jury found the defendants guilty in a general verdict, but we reversed. We noted that because the jury was not asked to indicate the basis for its verdict, we could affirm only if the Government proved all three theories alleged for criminal liability.[8] The panel majority concluded, however, that the circumstances of the transaction as alleged by the Government did not extend to honest services wire fraud. The panel reasoned that while honest services fraud generally involves bribery, kickbacks, or self-dealing, the defendants' conduct was disassociated from such actions. The panel noted that the Enron employees here breached a fiduciary duty in pursuit of corporate earnings goals,

---

> defraud Enron and its shareholders, including to deprive them of the intangible right of honest services of its employees, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds . . . and (b) knowingly and willfully falsify books, records and accounts of Enron . . . .

Counts two and three alleged that the defendants,

> having devised a scheme and artifice to defraud Enron and its shareholders, including to deprive them of the intangible right of honest services of its employees, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, specifically [as stated in two separate counts, certain interstate transmissions by facsimile and email between Houston and New York].

[7] *Brown I*, 459 F.3d at 516, 518.

[8] *Id.* at 518 (citing *Yates v. United States*, 354 U.S. 298, 77 S. Ct. 1064 (1957)).

which Enron had tied through incentives to employee compensation.[9] The panel noted in a footnote that Enron's corporate incentive policy, coupled with "senior executive support" for the barge transaction, created an understanding that Enron was a "willing beneficiary[] of the scheme" and set the case apart from other honest services fraud cases.[10] We specifically limited our holding to be that the conduct alleged by the Government was not a federal crime under the honest services theory of fraud, and we expressly declined to address the viability of the money or property charge and the books and records charge remaining in the indictment.[11]

Upon remand, the Government moved to redact the indictment to remove all references to the honest services theory of fraud. The redacted version of the indictment is otherwise identical to the indictment on which the defendants were convicted at the first trial. The defendants moved to dismiss the redacted indictment, raising claims of double jeopardy and arguing in part that *Brown I* necessarily precluded a retrial. The district court denied the motion but certified the double jeopardy claims for interlocutory appeal.[12]

## II.

Defendants Bayly and Furst contest on double jeopardy grounds the money or property charge of the redacted indictment. They contend that they may not be retried insofar as the indictment alleges that they schemed to

---

[9] *See id.* at 522 (stating that "where an employer intentionally aligns the interests of the employee with a specified corporate goal, where the employee perceives his pursuit of that goal as mutually benefitting him and his employer, and where the employee's conduct is consistent with that perception of the mutual interest, such conduct is beyond the reach of the honest-services theory of fraud").

[10] *Id.* at 522–23 n.13 (distinguishing *United States v. Gray*, 96 F.3d 769 (5th Cir. 1996)).

[11] *Id.* at 523.

[12] *See generally Abney v. United States*, 431 U.S. 651, 97 S. Ct. 2034 (1977).

deprive Enron of money or property. They reason that the Government must prove for this charge that they intended to deceive the putative victim but that this court held in *Brown I* that Enron was a willing participant in the scheme. They further contend that although Enron and its shareholders are legally distinct, the district court erroneously determined that a fraud could be worked on the corporation given that senior executives, including Fastow, approved the deal and the executives' actions show the corporation was not a victim. Finally, they argue that even if the shareholders could be victims, the redacted indictment fails to allege the deprivation of a legally cognizable money or property interest. They do not contend that retrial on the books and records charge would violate double jeopardy.

In a separate brief, Defendant Brown argues that a retrial is barred by the Double Jeopardy Clause because the original indictment charged as the object of the wire fraud only the deprivation of the intangible right of honest services, a theory that *Brown I* rejected. According to Brown, the redacted indictment fails to allege a valid offense apart from the honest services charge because it fails to allege an identifiable and cognizable object of money or property as the basis for the fraud and fails to allege that any Merrill Lynch employee deprived or took anything away from Enron or its shareholders.

"As traditionally understood, the Double Jeopardy Clause precludes multiple prosecutions and multiple punishments for the same offense." *United States v. Yeager*.[13] When a reviewing court determines that the evidence at the first trial was insufficient and reverses a conviction, a retrial will be barred by double jeopardy. *See Burks v. United States*.[14] A reversal on any other ground

---

[13] 521 F.3d 367, 371 (5th Cir. 2008).

[14] 437 U.S. 1, 18, 98 S. Ct. 2141, 2150–51 (1978).

will not foreclose a second trial. *United States v. Scott*.[15] The Double Jeopardy Clause also incorporates the collateral estoppel doctrine, which means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*.[16]

The defendants' arguments in this appeal largely implicate this latter aspect of double jeopardy and require us to revisit *Brown I*.[17] Whether a prosecution violates the Double Jeopardy Clause or is precluded by collateral estoppel are issues of law that we review *de novo*.[18]

We are not persuaded that our decision in *Brown I* precludes a retrial. Our opinion there was guided by the general verdict rule, which "requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States*.[19] Citing *Yates*, we determined that the defendants' convictions could not be upheld because there was no way to tell on which theory the jury had rested its verdict and the Government failed to prove that the honest services charge extended to the defendants' conduct.[20] But we did not

---

[15] 437 U.S. 82, 90–91, 98 S. Ct. 2187, 2193–94 (1978) ("The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict . . . poses no bar to further prosecution on the same charge." (internal citation omitted)).

[16] 397 U.S. 436, 443, 90 S. Ct. 1189, 1194 (1970).

[17] Indeed, Bayly and Furst contend in their reply brief that our statement in *Brown I* that Enron was a willing participant in the barge scheme is dispositive of their appeal.

[18] *Yeager*, 521 F.3d at 370–71; *United States v. Delgado*, 256 F.3d 264, 270 (5th Cir. 2001).

[19] 354 U.S. 298, 312, 77 S. Ct. 1064 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141 (1978).

[20] *Brown I*, 459 F.3d at 518, 523.

consider any other means of fraud alleged. We could not have been clearer that our reversal was premised narrowly and solely on the failure of the honest services charge, stating: "This opinion should not be read to suggest that no dishonest, fraudulent, wrongful, or criminal act has occurred. We hold only that the alleged conduct is not a federal crime *under the honest-services theory of fraud specifically*."[21] The opinion implicitly, if not explicitly, recognized the possibility that criminal wrongdoing might be proved in a retrial, as we noted that "the Government must turn to other statutes, or even the wire fraud statutes absent the component of honest services, to punish this character of wrongdoing."[22] *Brown I* thus did not on its face preclude a retrial on the money or property charge because the panel did not rule that the evidence for that charge was insufficient.[23]

Nor are we persuaded by Bayly and Furst that the panel's footnote reference to Enron as a "willing beneficiary" precludes a theory of Enron as a victim for all purposes. First, this contention does not account for the Enron shareholders, who were also alleged in the indictment to be victims apart from the corporation. Second, as part of the honest services discussion in *Brown I*, the "willing beneficiary" language was used to narrow the construction of honest services fraud to exclude the defendant's conduct and to distinguish the case.[24] The decision did not consider other avenues alleged for conviction, and instead

---

[21] *Id.* at 523 (emphasis in original).

[22] *Id.* at 522–23.

[23] *See Scott*, 437 U.S. at 90–91, 98 S. Ct. at 2193–94.

[24] *See Brown I*, 459 F.3d at 522–23 & n.13; *see also United States v. Skilling*, 554 F.3d 529, 545 (5th Cir. 2009) ("In essence, *Brown [I]* created an exception for honest-services fraud where an employer not only aligns its interests with the interests of its employees but also sanctions the fraudulent conduct, i.e., where the corporate decisionmakers, who supervised the employees being prosecuted, specifically authorized the activity."), *pet. for cert. filed*, 77 U.S.L.W. 3645 (U.S. May 11, 2009) (No. 08-1394).

noted that we "need not address the viability of the Government's remaining theories of criminal liability (the money-or-property and books-and-records charges)."[25] Enron was thus not excluded by the decision in *Brown I* as a victim for purposes of those charges.[26]

Brown's contention that the original indictment alleged only an honest services wire fraud offense, and that therefore a retrial presents a pure double jeopardy issue, is contrary to a plain reading of *Brown I*, which specifically recognized that the indictment alleged three means for the conspiracy. Brown's real argument is that without reference to honest services, the remaining allegations of the indictment are insufficient to state an offense. For example, he argues that the redacted indictment uses boilerplate language alleging a scheme to obtain money or property but fails to identify a specific object of that scheme. That contention is not a double jeopardy claim, however, and is not properly before us on interlocutory review.[27]

The defendants present additional challenges in the guise of double jeopardy but which similarly implicate sufficiency issues based on the district court's ruling. The district court held that the participation of Enron executives in the barge deal did not preclude Enron and its shareholders from being victims

---

[25] *Brown I*, 459 F.3d at 523.

[26] We hold only that *Brown I* does not preclude a retrial for the money or property charge and books and records charge. We do not hold that Enron or its shareholders were deceived, but whether they were or not for purposes of the additional fraud allegations is a question of fact best resolved at trial, not by a reviewing court addressing, as we did in *Brown I*, the limited question whether the indictment alleged one specific type of wire fraud offense. As an appellate court, we do not find facts. *See, e.g., Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S. Ct. 1527, 1530 (1986).

[27] *See Abney*, 431 U.S. at 663, 97 S. Ct. at 2042 (holding that the sufficiency of the indictment does not come within the rule permitting interlocutory review of a denial of a motion to dismiss); *see also United States v. Arreola-Ramos*, 60 F.3d 188, 191 (5th Cir. 1995) ("The interlocutory appeal that *Abney* permits is, however, limited to double jeopardy claims and does not include other challenges.").

of the fraud because the corporation and shareholders enjoy a separate identity from corporate officers and directors. It further determined that the right to accurate shareholder information is a legally cognizable intangible property right under the wire fraud statutes. Bayly and Furst contend that Enron's shareholders could not be victims separate from the corporation because the indictment fails to allege the shareholders were deprived of either money or legally cognizable "property." They also contend that shareholders possess no cognizable property right under 18 U.S.C. § 1343 in accurate economic information. Brown similarly argues that the indictment fails to allege a scheme to defraud any victim of that victim's specific money or property, and that honest services are the only intangible right protected under the wire fraud statutes. If the defendants are correct—and we intimate no opinion on the matter—their arguments concern the sufficiency of the offense alleged in the indictment, an issue which we do not address and which must be left for another day.[28]

## III.

We conclude that there is no issue of double jeopardy or collateral estoppel that impairs a retrial here. The district court's judgment is AFFIRMED.

---

[28] *Abney*, 431 U.S. at 663, 97 S. Ct. at 2042.