# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 18, 2010

No. 09-20781

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

WARREN TODD HOEFFNER, also known as Todd Hoeffner

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, HIGGINBOTHAM and GARZA, Circuit Judges.

PER CURIAM:

The defendant appeals from the district court's order denying his motion to dismiss on double jeopardy grounds. The defendant, an attorney, represented clients bringing silicosis claims against insureds of The Hartford Financial Services Group. He was indicted for wire fraud and mail fraud after he made several payments to employees of The Hartford out of the proceeds from settlements with The Hartford. During the course of a six-week trial, the government abandoned an honest services fraud allegation in the indictment, instead focusing on a money and property fraud allegation. The jury failed to reach a verdict, and the district court granted a mistrial. In this interlocutory appeal, we consider whether the government's abandonment of the honest

No. 09-20781

services fraud theory precludes retrial on the money and property fraud theory. For the following reasons, we hold that retrial is not precluded on the money and property fraud theory.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

Warren Todd Hoeffner, an attorney, represented over 900 individuals who brought silicosis and other silica-related claims against manufacturers and sellers of silica-containing products and related protective equipment. Among the insurers of these companies was The Hartford Financial Services Group ("The Hartford"). Rachel Marie Rossow was a claims supervisor working for one of The Hartford's subsidiaries and was responsible for settling claims and recommending appropriate settlement amounts for claims against The Hartford. John Prestage was a claims handler, and his supervisor was Rossow. Both Rossow and Prestage worked on the silica claims Hoeffner brought against The Hartford's insureds.

In 2002, Hoeffner began contacting the insurers for the silicosis defendants, including The Hartford, and offering to settle his clients' claims. In the following months, Hoeffner successfully settled his clients' claims with most of the defendants and received nearly $56 million in settlement payments, $34 million of which came from The Hartford. Hoeffner received a contingency fee of 40% of the settlement amounts.

During the settlement discussions, Hoeffner met with Rossow and Prestage several times. He funded trips for Rossow and Prestage to Laguna Beach, California, New York City, and Palm Beach, Florida. Also, unbeknownst to The Hartford, Hoeffner paid Rossow approximately $2.6 million and Prestage approximately $760,000 out of the funds that he received from the settlements with The Hartford. Among the payments that Hoeffner made to Rossow and Prestage were several checks drawn from Hoeffner's IOLTA trust account which

2

were mailed to Rossow and Prestage, a wire transfer from Hoeffner's IOLTA trust account to an account owned by Rossow, and a wire transfer to New Country Motors in Hartford, Connecticut for the purchase of two BMW automobiles, one each for Rossow and Prestage.

## B.    The Indictment

In a superceding indictment dated March 8, 2008,[1] Hoeffner, Rossow, and Prestage were charged with one count of conspiracy to commit mail and wire fraud, one count of conspiracy to commit money laundering, two counts of wire fraud, five counts of mail fraud, and six counts of money laundering.[2]

The conspiracy to commit wire and mail fraud count alleged that the defendants did "knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises . . . ." The indictment also alleged the "manner and means" of the conspiracy, alleging "[i]t was part of the conspiracy that":

> 17. Defendant Hoeffner would and did make payments to defendants Rossow and Prestage, through bribes and kickbacks, for recommending that subsidiaries of The Hartford pay certain amounts to settle the claims of his clients against The Hartford, its subsidiaries and its Insureds.
>
> 18. Defendants Hoeffner, Rossow and Prestage would and did falsely promise, pretend and represent to subsidiaries of The Hartford . . . that the settlement amounts of the claims against The Hartford . . . were appropriate amounts to settle the claims and in the best interests of The Hartford . . . , well knowing that the defendants intended that some of that money (the "Settlement

---

[1] The original indictment was filed on June 25, 2007.  The superseding indictment is substantially similar to the original indictment except that it adds an additional count of money laundering.  All references to the indictment refer to the superseding indictment.

[2] *See* 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1957 (money laundering).

No. 09-20781

Funds") would instead be funneled by and through Hoeffner to Rossow and Prestage.

19.   Defendants would and did cause subsidiaries of The Hartford to pay more than $34,000,000.00 in Settlement Funds, knowing that more than $3,000,000.00 of those funds would be used to pay bribes and kickbacks to Rossow and Prestage.

The indictment then alleged various wires and mailings as part of the execution of the scheme. In each of the substantive wire and mail fraud counts, the indictment alleged, under the heading "The Scheme and Artifice to Defraud,"

the defendants . . . did knowingly devise and intend to devise a scheme and artifice to defraud The Hartford and its subsidiaries . . . of their right to the honest services of Prestage and Rossow, and to obtain money and property from The Hartford and its subsidiaries . . . by means of false and fraudulent pretenses, representations and promises, . . . including the concealment of material facts.

The substantive counts each contained a "manner and means" section with allegations identical to those in Paragraphs 17, 18, and 19 of the conspiracy count.

## C.   The Trial

The district court severed the proceedings against Hoeffner from those against Rossow and Prestage, and Hoeffner was tried before a jury from August 20, 2009 through October 2, 2009. In support of the honest services fraud allegation, the government initially presented evidence that Hoeffner had made payments to Rossow and Prestage from the settlement funds in the form of bribes and kickbacks.[3] In support of the money and property fraud allegation, the government presented evidence that The Hartford would not have engaged

___

[3] We note that the defendant and the government seemed to have conflicting ideas of what, exactly, Hoeffner may have been bribing Rossow and Prestage to do. The defendant took the position that the indictment alleged that the bribes were given to Rossow and Prestage in exchange for their recommending inflated or overvalued settlement amounts. The government, on the other hand, initially presented evidence that Hoeffner bribed Rossow and Prestage to expedite the settlement approval process because he was concerned about possible impending tort reforms that would make settlement more unlikely.

in settlement discussions with Hoeffner had it known that its employees were going to receive a portion of the settlements.

Hoeffner conceded at trial that he made the payments to Rossow and Prestage, but he offered several theories of defense. He offered evidence that the settlement amounts were fair—i.e., the settlement amounts were not inflated or overvalued, so Hoeffner could not have bribed Rossow and Prestage because he had not received any gain in return. In relation to that theory, Hoeffner presented evidence that Rossow and Prestage were too low in The Hartford hierarchy to exert any influence over the settlement amounts. Hoeffner also testified that he had been extorted into making the payments when Rossow and Prestage threatened to stall the settlement approvals indefinitely.[4]

As the trial progressed, the government retreated from its theory that Hoeffner committed honest services fraud by paying bribes and kickbacks to Rossow and Prestage. Instead, the government took the position that the mere fact of the concealed payments to employees of The Hartford constituted a scheme to obtain money and property from The Hartford. The government also renounced the honest services fraud allegation during closing argument, asking the jury to focus instead on the money and property fraud allegation in the indictment.

During the jury charge conference, the government informed the district court that it wished to withdraw the honest services fraud theory from the jury's consideration completely.[5] As a result, the district court, over the defendant's objection, removed all references to honest services fraud, as well as bribes and

---

[4] As part of this defense, Hoeffner presented evidence that Rossow was having an affair with David Cain, a high-level executive at The Hartford, and Hoeffner testified that he believed the extortion was done at Cain's direction or at least with his approval.

[5] The government attempted to redact all references to bribes and kickbacks and honest services fraud from the indictment. The defendant objected to the redactions, and the district court sent the unaltered indictment to the jury.

No. 09-20781

kickbacks, from the jury instructions for the substantive fraud counts,[6] though the instruction for the conspiracy count still contained a reference to bribes and kickbacks.[7]

After three days of deliberation, the jury informed the district court that it was unable to reach a unanimous verdict. The district court then granted the defendant's request for a mistrial. Following the mistrial, the government immediately sought to retry the defendant on the same indictment. On October 19, 2009, the defendant filed a motion to dismiss the indictment on double jeopardy grounds. The defendant argued below, as he does here, that the government abandoned the entire indictment when it abandoned the honest

---

[6] The judge instructed the jury as follows with regard to the substantive wire and mail fraud counts:

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That the defendant knowingly created a scheme and artifice to obtain money and property from The Hartford and its subsidiaries, by means of false and fraudulent pretenses, representations and promises, including the concealment of material facts by falsely promising, pretending and representing that the settlement amounts of the claims against The Hartford, its subsidiaries and its insureds were appropriate amounts to settle the claims in the best interest of The Hartford, its subsidiaries and its insureds, well knowing that the defendant and Rachel Rossow and John Prestage intended that some of the settlement money would instead be funneled through the defendant to Rossow and Prestage.
. . .

A "scheme to defraud" includes any scheme to deprive another of money or property by false and fraudulent pretenses, representations or promises.


[7]     The instruction for the conspiracy count was substantially the same as the instruction for the substantive fraud counts, except that it required the jury to find that the defendant engaged in a "scheme and artifice to defraud The Hartford and its subsidiaries by paying bribes and kickbacks to Rachel Rossow and John Prestage . . . for their recommending that The Hartford pay settlement amounts *or* to obtain money and property from The Hartford . . ." (emphasis added).

6

services fraud theory at trial. This abandonment, according to the defendant, had the effect of a dismissal and precludes retrial on the money and property fraud theory.

On November 18, 2009, before the district court ruled on the defendant's motion to dismiss, the government obtained a second superseding indictment, which contained no reference to the honest services fraud theory or to bribes and kickbacks. On November 19, 2009, the district court denied, without explanation, the defendant's motion to dismiss. The defendant filed his notice of appeal the next day.

## II.   DISCUSSION

### A.   Standard of Review

We review de novo the district court's order denying the defendant's motion to dismiss the indictment on double jeopardy grounds, but we accept as true the district court's underlying factual findings unless clearly erroneous. *United States v. Mauskar*, 557 F.3d 219, 227 (5th Cir. 2009) (quoting *United States v. Gonzalez*, 76 F.3d 1339, 1342 (5th Cir. 1996)). In this interlocutory appeal, we are concerned only with the defendant's claim of double jeopardy, and we do not address the sufficiency of any of the allegations in the indictment. *See Abney v. United States*, 431 U.S. 651, 663 (1977).

### B.   Theories of Liability in the Indictment

We first decide whether the indictment alleged one theory of mail and wire fraud or two. The gravamen of the defendant's appeal is that the indictment contains only an honest services fraud theory of liability, which he calls the "bribes for lies" theory. According to the defendant, when the government abandoned the honest services fraud theory at trial, the government in effect abandoned the indictment completely, constructively dismissing the charges against him and terminating jeopardy with regard to all of the mail and wire fraud counts. The government, on the other hand, contends that the indictment

No. 09-20781

also alleged a scheme to obtain money and property, independent of the honest services fraud theory, and that it did not abandon the entire indictment when it abandoned the honest services fraud theory.

"The [Supreme] Court has long recognized that an indictment may charge . . . the commission of any one offense in several ways." *United States v. Miller*, 471 U.S. 130, 136 (1985). Indeed, "[i]t is well-established in this Circuit that a disjunctive statute may be pleaded conjunctively and proved disjunctively." *United States v. Haymes*, 610 F.2d 309, 310 (5th Cir. 1980).

The mail and wire fraud statutes are drafted in the disjunctive. They provide that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, *or* for obtaining money or property by means of false or fraudulent pretenses, representations or promises," uses the mail or wires is guilty of mail or wire fraud. 18 U.S.C. §§ 1341, 1343 (emphasis added). Section 1346 further defines the scope of punishable offenses, providing that a "'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Though the statutes criminalize the use of the mails and wires for "a variety of schemes," *United States v. McMillan*, 600 F.3d 434, 447 (5th Cir. 2010), they provide at least two means of committing mail or wire fraud: (1) a scheme or artifice to deprive another of his intangible right to honest services; and (2) a scheme or artifice to obtain money or property, *see United States v. Ratcliff*, 488 F.3d 639, 644 (5th Cir. 2007) (noting at least three different schemes punishable by the mail and wire fraud statutes).

The  indictment at issue in this case tracks the language of the statute exactly except that the honest services fraud and the money and property fraud are charged in the conjunctive. In Paragraph 15 of the conspiracy count, the indictment alleges that the defendant conspired with Rossow and Prestage "[t]o knowingly devise and intend to devise a scheme and artifice to defraud *and* to

obtain money by means of false and fraudulent pretenses" (emphasis added). Similarly, in each of the substantive mail and wire fraud counts, the indictment alleges that the defendant, along with Rossow and Prestage, "did knowingly devise and intend to devise a scheme and artifice to defraud The Hartford and its subsidiaries. . . of their right to the honest services of Prestage and Rossow, *and* to obtain money and property from The Hartford and its subsidiaries . . . by means of false and fraudulent pretenses . . . , including the concealment of material facts" (emphasis added). We do not agree with the defendant that the indictment alleges only one theory of liability. The indictment tracks the language of the mail and wire fraud statutes, which provide for at least two means of committing mail and wire fraud, and thus alleges at least two means of violating the statutes. *See United States v. Gordon*, 780 F.2d 1165, 1171 (5th Cir. 1986) ("[A]n indictment which tracks the statutory language is sufficient to charge mail fraud [or] wire fraud.") (internal citations omitted).

Our conclusion is bolstered by our recent decision in *United States v. Brown* (*Brown II*), 571 F.3d 492 (5th Cir. 2009). In that case, several former Merrill Lynch executives were indicted and convicted, along with two Enron executives, for wire fraud in connection with a scheme to artificially enhance Enron's 1999 earnings. *Id.* at 494. We vacated their original convictions, holding that the indictment did not allege a viable honest services fraud theory.[8] *See United States v. Brown* (*Brown I*), 459 F.3d 509, 517 (5th Cir. 2006). When the government sought to retry the defendants for wire fraud, they appealed, arguing that a retrial would violate the Double Jeopardy Clause. *Brown II*, 571 F.3d at 496. We held that retrial would not violate the Double Jeopardy Clause, because, even though the government was precluded from retrying the

---

[8] "The panel reasoned that while honest services fraud generally involves bribery, kickbacks, or self-dealing, the defendants' conduct was disassociated from such actions." *Brown II*, 571 F.3d at 496.

defendants on the honest services theory, the money and property theory had survived. *Id.* at 498.

The language in the *Brown* indictment mirrors the language of the indictment in this case. The *Brown* indictment's conspiracy count alleged that "[the defendants] conspired to . . . knowingly and intentionally devise a scheme and artifice to defraud Enron and its shareholders, including to deprive them of the intangible right of honest services of its employees, *and* to obtain money and property by means of materially false and fraudulent pretenses . . . ." *Id.* at 495 n.6 (emphasis added). The substantive wire fraud counts similarly alleged that the defendants had "devised a scheme and artifice to defraud Enron and its shareholders, including to deprive them of the intangible right of honest services of its employees, *and* to obtain money and property by means of materially false and fraudulent pretenses . . . ." *Id.* (emphasis added). Based on this language, the defendants in *Brown* argued, as Hoeffner does here, that the "indictment charged as the object of the wire fraud only the deprivation of the intangible right of honest services." *Id.* at 496–97. We rejected that argument, holding that the defendants could be retried on the money and property fraud theory, which survived after the government redacted the indictment to remove the references to the honest services fraud theory. *Id.* at 498.

Despite the clear language of the indictment, Hoeffner argues that the indictment, taken in its entirety, alleges only honest services fraud. In support of his assertion, the defendant points to Paragraphs 17 through 19 in the manner and means section of the conspiracy count, which are repeated verbatim in the substantive fraud counts. Paragraph 17 alleges that the defendant made payments to Rossow and Hoeffner "through bribes and kickbacks" for recommending settlement amounts to The Hartford. Paragraph 18 alleges that the defendant, Rossow, and Prestage falsely represented that the settlement amounts were in The Hartford's best interests, "well knowing that the

defendants intended that some of that money would instead be funneled by and through Hoeffner to Rossow and Prestage." Finally, Paragraph 19 states that more than $3 million of the funds that the defendant received were "used to pay bribes and kickbacks to Rossow and Prestage." These paragraphs taken together, the defendant argues, signal that the indictment alleges a single scheme involving bribes and kickbacks, and therefore a single theory of liability based on honest services fraud.

We are unpersuaded by the defendant's argument. The defendant fixates on the "bribes and kickbacks" language in the manner and means sections of the indictment, but disregards the allegation, contained in every count, that he engaged in a scheme to obtain money and property from The Hartford through false and fraudulent pretenses when he, Rossow, and Prestage concealed the payments from The Hartford. The core of the defendant's argument is that the indictment did not allege a money and property fraud theory because the only scheme to defraud was premised on bribes and kickbacks. That argument is not a double jeopardy claim, and it is not properly before us on interlocutory review because it goes to the sufficiency of the money and property fraud theory and not to its existence in the indictment.[9]  *See Brown II*, 571 F.3d at 498; *Abney*, 431 U.S. at 663.

Nor are we persuaded by the defendant's argument that the indictment, to the extent it alleges two theories of liability, alleges two theories of honest services fraud—one based on bribery and the other for undisclosed self-dealing. At oral argument, the defendant's counsel urged us to consider the history of

---

[9] The defendant also asserts that the indictment does not state an offense for money and property fraud absent the honest services fraud allegation and the bribes and kickbacks language. He contends that a scheme involving mere "payments" that were not disclosed, as opposed to bribes and kickbacks that were not disclosed, would render the indictment unconstitutionally vague. This argument also goes to the sufficiency of the complaint, which we are not permitted to review at this point.

honest services fraud in this circuit in order to convince us that the reference to "concealment" in the indictment refers to undisclosed self-dealing, a now-defunct species of honest services fraud, and not concealment for the purpose of obtaining money and property.

To understand the defendant's argument, we must consider the state of the law before *Skilling v. United States*, 130 S. Ct. 2896 (2010). In *Skilling*, an Enron executive was indicted for honest services fraud for his undisclosed self-dealing related to Enron's spiral into bankruptcy. *Id.* at 2908. The government argued that the honest services fraud statute permitted prosecution for two species of fraud related to intangible rights: bribery and undisclosed self-dealing. *Id.* at 2931–32. The Court rejected that argument, holding that honest services fraud is actionable only for schemes involving bribes and kickbacks. *Id.* at 2933.

The defendant argues that the references to concealment in the indictment must have been based on the government's pre-*Skilling* attempts to indict defendants for honest services fraud based on undisclosed self-dealing. As evidence, the defendant notes that § 1346, which defines scheme to defraud as including deprivation of the right to honest services, is cited only in the substantive fraud counts, which is also where the word "concealment" appears in the indictment. The defendant believes that this juxtaposition is not coincidental, and that the "concealment" alleged in the indictment must be that Rossow and Prestage concealed their self-dealing from their employer.

This argument is not persuasive. Counts 3 through 9 of the indictment, the substantive fraud counts, allege that the defendant engaged in a scheme and artifice "to obtain money and property from The Hartford . . . by means of false and fraudulent pretenses . . . , including the concealment of material facts." The indictment uses the term "concealment" to explain that one of the "false and fraudulent pretenses" employed by the defendant to obtain money and property

was the concealment of material facts. The reference to § 1346 does not appear until the last sentence of each count, whereby the indictment alleges that the acts described in the count were "[i]n violation of Title 18, United States Code, Sections [1341 and 1343], 1346, and 2." As the government concedes, the indictment does contain an honest services fraud allegation in addition to the money and property fraud allegation. We do not connect the word "concealment" with honest services fraud based on undisclosed self dealing because it is clear from the indictment that concealment appears in connection with the money and property fraud allegation. To the extent that the indictment may have alleged honest services fraud with regard to undisclosed self-dealing, we find that the allegation was separate and apart from the money and property fraud allegation.[10]

## C . Government Abandonment of a Theory

Having decided that the indictment does, in fact, allege two theories of liability, we next must determine the consequence of the government's abandonment of one of those theories. The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend V. "As traditionally understood, the Double Jeopardy Clause precludes multiple prosecutions and multiple punishments for the same offense." *Brown II*, 571 F.3d at 497 (internal quotation omitted); *see also Brown v. Ohio*, 432 U.S. 161, 165 (1977). T h e  D o u b l e Jeopardy Clause is not implicated, however, "when[] the State seeks a second trial after its first attempt to obtain a conviction results in a mistrial because the jury has failed to reach a verdict. . . . [T]he second trial does not put the defendant in jeopardy 'twice.'" *Yeager v. United States*, 129 S. Ct. 2360, 2366

---

[10] We note that the indictment in *Skilling* alleged, along with the invalid honest services fraud theory, a money and property fraud theory. *See Skilling*, 130 S. Ct. at 2934 ("[T]he indictment alleged three objects of the conspiracy—honest-services wire fraud, money-or-property wire fraud, and securities fraud.").

(2009). "Instead, a jury's inability to reach a decision is the kind of 'manifest necessity' that permits the declaration of a mistrial and the continuation of the initial jeopardy that commenced when the jury was first impaneled." *Id.*

The Double Jeopardy Clause operates to "preclude[] the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Id.* This is because "'[w]hen an issue of ultimate fact has once been determined by a valid and final judgment' of acquittal, it 'cannot be litigated' in a second trial for a separate offense." *Id.* at 2367 (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). We have held that when a prosecutor opts to voluntarily discontinue a trial after jeopardy has attached, the dismissal functions as an acquittal on the charge, and issues implicated by the dismissed counts are deemed to be resolved in the defendant's favor. *Humphries v. Wainwright*, 584 F.2d 702, 705–06 (5th Cir. 1978).

To determine which issues, if any, were necessarily decided in the defendant's favor during a previous trial, we must "'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter.'" *Yeager*, 129 S. Ct. at 2367 (quoting *Ashe*, 397 U.S. at 444). "[T]he inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Id.* (quoting *Ashe*, 397 U.S. at 444). "[A] defendant invoking *Ashe* has 'the burden . . . to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.'" *United States v. Whitfield*, 590 F.3d 325, 371 (5th Cir. 2009) (quoting *Dowling v. United States*, 493 U.S. 342, 350 (1990)).

Here, we do not have the benefit of a jury verdict on the honest services fraud theory. Both the government and the defendant agree that the government abandoned the honest services fraud allegation during trial. The parties also agree that this abandonment of the honest services fraud theory had the effect of acquitting the defendant with regard to that theory. *See*

*Humphries*, 584 F.2d at 705–06. We therefore assume, without deciding, that the abandonment functioned as an acquittal of the defendant with regard to the honest services fraud theory only.

Assuming that the government's abandonment of the honest services fraud theory functioned as an acquittal *on that theory only*, and assuming that, as a result, the acquittal necessarily decided certain issues in the defendant's favor, we must determine which issues, if any, were decided in the defendant's favor such that the government is now precluded from litigating them in a subsequent trial. The relevant inquiry is whether the issue "was a critical issue of ultimate fact" in the previous proceeding. *Yeager*, 129 S. Ct. at 2368; *see also Humphries*, 584 F.2d at 705–06. In *Humphries*, the prosecutor voluntarily dismissed a charge, after jeopardy had attached, that the defendant had been driving while intoxicated. 584 F.2d at 704. We held that the dismissal, which functioned as an acquittal, had decided in the defendant's favor one of two possible critical facts: either that he was not driving or that he was not intoxicated. *Id.* at 705–06. We accepted the district court's finding, which was based on an examination of the record and circumstances of the prior proceeding, that the dismissal had decided that the defendant was not intoxicated. *Id.* Thus, any further prosecution for vehicular manslaughter by intoxication was barred because the element of intoxication had already been decided by the previous dismissal. *Id.* at 706.

We look to the record of the proceedings in this case to determine whether any issues have been decided in the defendant's favor. The elements of honest services fraud include (1) a scheme to deprive another of the right to honest services; (2) use of the mails and/or wires to execute the scheme; and (3) materiality of the falsehoods employed in the scheme. *Ratcliff*, 488 F.3d at 643–44. We conclude that the only issue decided in the defendant's favor by the government's abandonment of the honest services fraud theory was based on the

first element—the defendant did not engage in a scheme to deprive The Hartford of its right to honest services. Based on the government's attempts to redact the words "bribes and kickbacks" from the indictment, its failure to present evidence that the payments were bribes, and its failure to argue that the payments were bribes, we find that the government's abandonment decided, at most, that the payments the Hoeffner made to Rossow and Prestage cannot be characterized as bribes or kickbacks. Because the defendant did not contest the fact of the payments, we conclude that this fact was not decided in the defendant's favor.

Retrial on the money and property fraud theory is not precluded because the government need not prove that the defendant deprived The Hartford of its rights to the honest services of its employees or that the payments must be characterized as bribes or kickbacks. Indeed, in a mail or wire fraud case premised on a scheme to obtain money or property, "[t]he issue is whether the victims' property rights were affected by the misrepresentations." *McMillan*, 600 F.3d at 449.

The defendant argues that, even if the indictment alleged two theories of liability, both theories were predicated on the same scheme to defraud The Hartford—the payment of bribes and kickbacks to Rossow and Prestage—which the government abandoned. In support of this argument, he again points us to the manner and means sections of the indictment. In each count, after the indictment alleges both a scheme to deprive The Hartford of the honest services of its employees and a scheme to obtain money and property from The Hartford, the indictment goes on to state "It was part of the scheme and artifice to defraud that [Hoeffner paid bribes and kickbacks to Rossow and Prestage]." According to the defendant, the government abandoned the entire manner and means section when it abandoned the honest services fraud theory and admitted that the payments were not bribes or kickbacks, leaving no manner and means of committing money and property fraud.

No. 09-20781

Again, we believe the defendant's real complaint is that the indictment failed to allege a separate scheme to obtain money and property.[11]  As we noted above, the indictment does in fact allege that the defendant engaged in a scheme to obtain money and property from The Hartford by means of false and fraudulent pretenses.  Furthermore, it is not clear that the entire manner and means section refers to the honest services fraud theory and not the money and property fraud theory.  For instance, Paragraph 18 contains no reference to bribes or kickbacks.  But even if the entire manner and means section of the indictment related only to the honest services fraud theory, the defendant's complaint about the indictment's failure to allege a manner and means of committing money and property fraud goes to the sufficiency of the indictment, a matter which we cannot review on this interlocutory appeal. *See Brown II*, 571 F.3d at 498; *Abney*, 431 U.S. at 663.

In arguing that the government is precluded from retrying him on a money and property fraud theory, the defendant relies heavily on *United States v. Gray*, 705 F. Supp. 1224 (E.D. Ky. 1988), and *United States v. Slay*, 717 F. Supp. 689 (E.D. Mo. 1989).  In *Gray*, the government indicted the defendants for mail fraud, alleging four distinct theories, including two intangible rights theories (similar to the honest services theory allowed by § 1346).  705 F. Supp. at 1226. After the defendants were convicted of mail fraud, the Supreme Court reversed

---

[11] Early in the trial the defendant brought an emergency motion to disclose the grand jury materials, arguing that the government had constructively amended the indictment.  He was concerned that the government was presenting only evidence that Hoeffner, Rossow, and Prestage had concealed the payments and not presenting any evidence that the payments were bribes or kickbacks.  The district court denied the motion, stating "I believe that the defense was appraised from the very first status conference as to what the government's theory of this case was.  The defense disagreed with it, but they knew about it."

Even assuming the government's proof at trial varied from the indictment such that the indictment was constructively amended, retrial would not be precluded on double jeopardy grounds. *See United States v. Mize*, 820 F.2d 118, 119–20 (5th Cir. 1987) (reversal based on a constructive amendment of the indictment does not bar conviction based on retrial of an indictment containing proper allegations).

17

their convictions, holding that the mail fraud statute in force did not support the intangible rights theory of prosecution. *See McNally v. United States*, 483 U.S. 350, 359–60 (1987).[12]   On remand, the government sought to retry the defendants on the remaining theories of mail fraud, which included a money and property fraud theory. *Gray*, 705 F. Supp. at 1231.   The court held that retrial was precluded because, although it was alleged in the indictment and technically instructed to the jury, the government had abandoned the money and property fraud theory at trial by failing to present any evidence or argument to support that theory. *Id.* at 1231–32.

Similarly, in *Slay*, the indictment alleged multiple theories of mail fraud, including honest services fraud and money and property fraud theories. 717 F. Supp. at 690.   The jury convicted the defendant of mail fraud, but the Supreme Court released its decision in *McNally* before the defendant was sentenced. *Id.* at 691.   The government sought to retry the defendant on the money and property fraud theory, but the district court dismissed the indictment on double jeopardy grounds. *Id.* at 696.   The court found that, while the indictment alleged a money and property fraud theory and the jury was technically instructed on the theory, the government had abandoned the money and property theory during trial by failing to present any evidence or argument related to that theory. *Id.* at 695–96.

The defendant's reliance on these cases is misplaced.   We agree with the defendant that the holdings of these cases demonstrate that once the government abandons a theory by failing to present any evidence related to the theory, the government cannot seek to retry a defendant on the abandoned theory.   But this case is factually distinct from *Slay* and *Gray*.   Whereas in those cases the government failed to present any evidence of money and property fraud

---

[12] In response to *McNally*, Congress quickly enacted 18 U.S.C. § 1346, which specifically allows prosecution under the mail fraud statute for a scheme to deprive honest services.

and focused its attention on honest services fraud, in this case the government focused its attention on the money and property fraud theory, paying little attention to the honest services fraud theory. Therefore, retrial is not precluded on the government's unabandoned money and property fraud theory.

The defendant also relies heavily on *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988) and *United States v. Cavanaugh*, 948 F.2d 405 (8th Cir. 1991). We find the defendant's reliance on these cases equally unconvincing. In both cases, the defendant was indicted on two theories of liability. *See Saylor*, 845 F.2d at 1402 (murder by conspiracy and murder as an accomplice); *Cavanaugh*, 948 F.2d at 412 (murder and assault resulting in serious bodily injury). In each case, the jury convicted the defendant on one theory but failed to return any verdict with regard to the other theory. *Saylor*, 845 F.2d at 1404; *Cavanaugh*, 948 F.2d at 412, 414. The defendants' convictions were reversed for insufficient evidence with regard to the convicted theory, and the government sought to retry the defendants on the other theory. *Saylor*, 845 F.2d at 1404; *Cavanaugh*, 948 F.2d at 411–12. Both the Sixth Circuit and the Eighth Circuit held that retrial was precluded because jeopardy had terminated with regard to the second theory when the jury failed to return a verdict. *Saylor*, 845 F.2d at 1404, 1408; *Cavanaugh*, 948 F.2d at 414, 417. In this case, however, jeopardy has not terminated with regard to the money and property fraud theory because the jury's failure to reach a verdict was the result of a mistrial, not a product of the government's failure to obtain a verdict on the theory.

We hold that the Double Jeopardy Clause bars retrial on the honest services fraud theory in the indictment. Retrial is not precluded, however, on the money and property fraud theory. Therefore, it was not error for the district court to deny the defendant's motion to dismiss the indictment.

## CONCLUSION

For the foregoing reasons, the order of the district court is AFFIRMED.