**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 21, 2012

No. 11-10031

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CYNTHIA LYNN ORTEGA; DANIEL ALAN WASYL,

Defendants-Appellants

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 2:10-CR-37-2

Before STEWART, CLEMENT and GRAVES, Circuit Judges.

PER CURIAM:[*]

Cynthia Lynn Ortega and Daniel Alan Wasyl appealed their convictions
of (1) conspiracy to commit a drug offense in violation of 21 U.S.C. § 846, and (2)
possession with intent to distribute cocaine, and aiding and abetting, in violation
of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  A Texas Highway Patrol Department
of Public Safety ("DPS") trooper stopped a vehicle carrying cocaine and arrested
its driver, Wasyl, and passenger, Ortega.  The prosecution introduced text
messages that were sent to Ortega's cellular phone.  Ortega and Wasyl objected

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-10031

to the introduction of the text messages into evidence. The district court overruled Ortega's and Wasyl's objections on the grounds that the text messages' probative value outweighed their prejudicial effect and admitted the text messages as part of the evidence. A jury convicted Ortega and Wasyl on both counts. Ortega and Wasyl appealed. We AFFIRM.

## Facts and Procedural History

On May 23, 2010, Oretga and Wasyl were traveling in a 70 mile-per-hour zone eastbound on Interstate 40 in Texas towards Oklahoma City in a 2008 Chevrolet C1500 Silverado 4C pickup truck. DPS trooper Ben Dollar pulled the Chevrolet over at approximately the 100-mile marker for following too closely, less than two car lengths behind a commercial vehicle. During the traffic stop, Wasyl told Trooper Dollar that he had agreed to drive the vehicle to Oklahoma City, Oklahoma because Enrique Gomez – the owner of the vehicle and a general contractor with EG Pro Framers – had asked Wasyl to perform electrical work on houses in Oklahoma City. To the contrary, Ortega stated that she had agreed to accompany Wasyl to Phoenix, Arizona at the request of her sister, Gomez's wife. Ortega's and Wasyl's inconsistent statements – primarily the fact that they stated two very different destinations – led Trooper Dollar to request permission to search the vehicle. Wasyl consented, and Trooper Dollar drilled into a compartment located beneath the vehicle and found approximately eight kilograms of powdered cocaine and twenty grams of crack cocaine. Trooper Dollar then arrested both Ortega and Wasyl.

Following the arrest, the authorities obtained a warrant to search Ortega's cellular phone. While searching Ortega's cellular phone, the authorities learned that Ortega had received, subsequent to her arrest, the following four text messages from a man who is solely identified in the record as "Mike":

1)     Received on May 24, 2010 at 8:37 a.m. from Mike:

No. 11-10031

"u got a 20?"

2)    Received on May 24, 2010 at 10:33 a.m. from Mike:

"Hey, its mike. I need to get aomething asap. Please get back to me."

3)    Received May 24, 2010 at 6:44 p.m. from Mike:

"Hey, Its Mike. Do you have a 20 for sale?"

4)    Received June 7, 2010 at 5:47 p.m. from Mike:

"Whats up Cynthia, Its Mike.  Do you have anything?"

On September 15, 2010, trial commenced.  Trooper Dollar testified that he suspected that Ortega and Wasyl were transporting illegal narcotics.  Trooper Dollar had noticed sprayed and "textured mud" on the vehicle that is "a common tactic used to cover up maybe a fresh panel that doesn't match perfectly underneath the vehicle to be able to camouflage this from the untrained eye" and to disguise compartments concealing contraband.  Trooper Dollar further testified that Ortega and Wasyl were nervous during the traffic stop.  Ortega "displayed a very deep, erratic breathing pattern that was just very labored and deep while she was sitting still in an air-conditioned truck" and Wasyl's hands shook "uncontrollably" when he handed Trooper Dollar his license and paperwork for the vehicle.  Trooper Dollar also testified that Ortega and Wasyl had offered conflicting explanations of their trip.  Wasyl told Trooper Dollar that Ortega had picked him up, whereas Ortega told Trooper Dollar that Wasyl had picked her up.  As further support for his suspicion that the vehicle was involved in drug trafficking, Trooper Dollar also testified that:

- "[T]he backseat has an abundant amount of food, drinks, energy drink, and a cooler in the backseat. . . . [T]his shows that these folks are interested in hard travel.  They're not interested in stopping for food, dining or sightseeing.  They're interested in getting from Point

No. 11-10031

A to Point B and not interested in stopping for food or drink on the way."

- "When we see . . . a key to the ignition and a key to the toolbox, that is substantial to us. That tells me that that person is not trying to connect themselves to the vehicle."

- An empty glove box "doesn't look like a legitimate everyday person's glove box that I come in contact with over and over again, that the vehicle is legitimately traveling and they're legitimately using that vehicle. To me, that shows that that vehicle doesn't have a purpose of an innocent motoring public."

- An oversized air freshener "would cover any odor of any kinds of glues, epoxies, or narcotics that might exist from building a compartment or the actual narcotics themselves."

The record also contains video recordings of the traffic stop from Trooper Dollar's vehicle, and an insurance policy dated May 21, 2010 – just two days prior to their arrest – that added Ortega as an insured.

The prosecution also presented evidence from three other witnesses. Carlos Perez, a task force officer with the Amarillo Police Department assigned to the United States Drug Enforcement Administration ("DEA"), testified that the text messages came from Ortega's cellular phone. Ortega and Wasyl objected. The district court applied Federal Rule of Evidence 404(b) and found that the probative value of the text messages outweighed their prejudicial effect.

Daniel Baldwin, a special agent from the DEA, testified that, based on his experience and training, Mike's text messages appeared to be soliciting a rock of cocaine worth $20. Agent Baldwin testified that the wholesale street value of the cocaine amounted to $125,000, while the retail (sold separately) street value of the cocaine was approximately $285,000. Scott Wischnewsky, a chemist from the DEA, stated that testing of the substance found in the vehicle revealed 7.972 kilograms of powder cocaine and 20.2 grams of crack cocaine.

No. 11-10031

Ortega and Wasyl elected not to take the witness stand.  During closing arguments, the attorney for Ortega and Wasyl contended that they did not know that there were illegal narcotics in the vehicle.  Ortega and Wasyl maintained that (1) nothing was distinctive about their demeanor when DPS arrested them, and (2) the prosecution had offered no other proof establishing that Ortega and Wasyl knew that illegal narcotics were located beneath the vehicle.  Ortega further contended that the text messages from Mike, even if they related to illegal narcotics at all, concerned at most a small-time illegal narcotics transaction that had nothing to do with transporting hundreds of thousands of dollars worth of cocaine across state lines.  Ultimately, after deliberating on all of the evidence, the jury found Ortega and Wasyl guilty of both counts charged in the indictment.  Ortega and Wasyl appealed.

## Standard of Review

This court reviews a decision to admit evidence for abuse of discretion. *United States v. Williams*, 620 F.3d 483, 488 (5th Cir. 2010).  "We review the district court's admission of extrinsic offense evidence over a 404(b) objection under a 'heightened' abuse of discretion standard."  *United States v. Jackson,* 339 F.3d 349, 354 (5th Cir. 2003).  "Evidence in criminal trials must be 'strictly relevant to the particular offense charged.'"  *Id.*

## Analysis

The issue is whether the district court erred by admitting into evidence the text messages sent to Ortega.  Ortega and Wasyl argued that the district court erroneously admitted the text messages sent by Mike.  The prosecution argued, and the district court agreed, that the probative value of the text messages outweighed their prejudicial effect.

> Rule 404(b) indicates that "'Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.' But such evidence is 'admissible for other purposes

No. 11-10031

such as proof of motive, opportunity, *intent*, preparation, plan, *knowledge*, identity, or *absence of mistake or accident*.'"

*United States v. Olguin,* 643 F.3d 384, 389 (5th Cir. 2011) (citing former FED. R. EVID. 404(b)) (emphasis in original). This court established a two-part test to determine the admissibility of extrinsic evidence: (1) "it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character," and (2) "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (*en banc*).

## I.     Relevant Evidence

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Here, the prosecution sought to introduce the text messages because they support an inference that Ortega and Wasyl were involved in dealing cocaine. Indeed, the inference that the prosecution wanted the jury to draw was that these types of text messages were circumstantial – though not determinative – evidence that Ortega and Wasyl were involved in the illegal narcotics trade.

Text messages seeking to purchase illegal narcotics serve as circumstantial evidence of Ortega's knowledge of the illegal narcotics discovered in the hidden compartment. Such evidence demonstrated not only that the sender of the text messages sought to purchase illegal narcotics, but also that the sender of the text messages believed that the recipient, Ortega, possessed illegal narcotics. Therefore, the fact that these out-of-court statements, here text messages, are being used to support a material inference makes them relevant. *See* FED. R. EVID. 401.

6

No. 11-10031

## II.    Probative Value versus Prejudicial Effect

The second prong of the Fifth Circuit *Beechum* test requires this court to balance whether the probative value of the text messages outweighed their prejudicial effect. "The court may exclude relevant evidence if its *probative value is substantially outweighed* by a danger of one or more of the following: *unfair prejudice*, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403 (emphasis added).   Here, as aforementioned, the district court carefully weighed the prejudicial effect of the text messages against their probative value in light of Rule 403.  The district court determined that their probative value outweighed the prejudicial effect.  After considering the record, the parties' briefs and the arguments contained therein, as well as oral argument, this court is of the opinion that Ortega and Wasyl have not demonstrated reversible error.  The district court did not abuse its discretion in admitting the text messages into evidence.

### Conclusion

We AFFIRM the judgment of the district court on the ground that the district court did not abuse its discretion by finding the text messages admissible pursuant to Federal Rules of Evidence 401, 403 and 404(b).