# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2023

Lyle W. Cayce
Clerk

No. 22-50234

United States of America,

*Plaintiff—Appellee*,

*versus*

Lizandro Guia-Lopez,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:21-CR-158-1

_____

Before Duncan and Wilson, *Circuit Judges*, and Schroeder, *District Judge*.[*]

Per Curiam:[†]

_____

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50234

A jury convicted Lizandro Guia-Lopez of conspiracy to transport and transportation of illegal aliens. Guia-Lopez alleges constitutional violations, error in the jury instructions, and that the admission of certain evidence deprived him of due process. For the following reasons, we AFFIRM.

## I. Background

### A. Factual Background

Guia-Lopez was charged in a two-count superseding indictment with (a) conspiracy to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) & (B)(i) and (b) transportation of illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) & (B)(i).

On February 28, 2021, Border Patrol Agent Ryland Brown pulled over a black Chevy Equinox on suspicion of possible alien smuggling due to indicators such as mud and handprints, a low suspension, obstructions in the vehicle, and its "high rate of speed." Upon stopping the vehicle he saw Guia-Lopez as the driver, codefendant Yesenia Romero in the front passenger seat, and six passengers in the passenger and cargo areas. Agent Brown believed that the six individuals in the backseat and cargo area had illegally crossed the border because they were wet, muddy, nervous, sweating, and unable to provide documentation as to their legal status.

Homeland Security Investigations Agent Anthony Golando interviewed Romero and Guia-Lopez after they were arrested. Romero waived her *Miranda* rights and provided her account of what transpired and Guia-Lopez's involvement. Guia-Lopez refused to execute the waiver of rights form and stated he did not wish to speak with Agent Golando. Shortly thereafter, Agent Golando asked Guia-Lopez if he would consent to a search

2

No. 22-50234

of his cellphone. Guia-Lopez read and signed a consent form to search his cellphone and wrote his cellphone password at the top of the form.

## B. Procedural Background

On May 26, 2021, the district court conducted a hearing on Guia-Lopez's motion to suppress the passcode and contents of his cellphone. After finding Guia-Lopez's Fifth Amendment invocation of the right to remain silent had not been fully honored, the district court granted Guia-Lopez's motion in part by suppressing the passcode that Guia-Lopez had given to Agent Golando. The district court, however, denied the portion of Guia-Lopez's motion requesting the suppression of Guia-Lopez's consent and the messages found on the cellphone.

Trial was held in November 2021. The jury found Guia-Lopez guilty of conspiracy to transport illegal aliens and transportation of illegal aliens. Guia-Lopez was sentenced to twenty-four months of imprisonment followed by three years of supervised release. Guia-Lopez timely noticed and filed this appeal.

## II. JURISDICTION

We have jurisdiction because Appellant challenges a final judgment. 18 U.S.C. § 3742; 28 U.S.C. § 1291.

## III. DISCUSSION

## C. A. The Jury Instructions Did Not Constructively Amend the Indictment

The first dispute between the parties is whether the jury instructions allowed Guia-Lopez to be convicted on a theory that was broader than the one charged in the indictment. We determine there was no plain error in the jury instructions and affirm the district court's ruling.

3

No. 22-50234

The first count of the indictment charged, in relevant part:

> On or about February 28, 2021, in the Western District of Texas, the Defendants,
>
> **LIZANDRO GUIA-LOPEZ (1)**
>
> **YESENIA ROMERO (2)**
>
> did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit the following offense against the United States: to transport and move within the United States, and attempt to transport and move within the United States . . . certain aliens who had entered and remained in the United States in violation of law . . . .

Guia-Lopez relies on *United States v. Sanders* to argue that the indictment's use of the term "with others" required the Government to show that Guia-Lopez and Romero did not just conspire with each other. *See* 966 F.3d 397 (5th Cir. 2020). Guia-Lopez argues that the jury instructions constructively amended the indictment because the jury was only required to find Guia-Lopez and Romero conspired with each other.

The Government argues that the jury instructions did not broaden the indictment because an "indictment count that alleges in the conjunctive a number of means of committing a crime can support a conviction if any of the alleged means are proved." *See United States v. Miller*, 471 U.S. 130, 136 (1985). The Government argues that the indictment charges several conjunctive acts—including a conspiracy between those "known to the grand jury," *i.e.*, Guia-Lopez and Romero. The Government argues that the language of the indictment allows the Government to prove its case in the disjunctive by showing a conspiracy "involving Guia-Lopez and Romero or Guia-Lopez and Cruz." *See United States v. Davis*, 995 F.3d 1161, 1167 (10th

4

Cir. 2021).  The Government also argues Guia-Lopez has not shown that the alleged error affected his substantial rights.

The parties agree this issue is subject to plain-error review because there was no challenge to the jury instructions.  We have the discretion to remedy an error that "seriously affects the fairness, integrity or public reputation of judicial proceedings" if it is shown that "(1) there is an 'error,' (2) that is 'clear or obvious,' and (3) that error 'affected the appellant's substantial rights.'"  *United States v. Green*, 47 F.4th 279, 288 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 747 (2023), *and cert. denied sub nom. Selgas v. United States*, 143 S. Ct. 1058 (2023) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).  "A jury instruction must: (1) correctly state the law, (2) clearly instruct the jurors, and (3) be factually supportable." *Id.* at 294 (quoting *United States v. Fairley*, 880 F.3d 198, 208 (5th Cir. 2018)). "Error in a charge is plain only when, considering the entire charge and evidence presented against the defendant, there is a likelihood of a grave miscarriage of justice." *Id.* (citing *United States v. McClatchy*, 249 F.3d 348, 357 (5th Cir. 2001)).  In other words, jury instructions amount to plain error when they "could have meant the difference between acquittal and conviction."  *Id.* at 294 (quoting *Fairley*, 880 F.3d at 208).

There is no plain error here.  There is no dispute that the jury instructions correctly stated the law to the jury.  Instead, Guia-Lopez argues the indictment requires "both named defendants . . . [to] knowingly and intentionally combine, conspire, confederate and agree ***with others*** known and unknown to the Grand Jury," but the jury instructions allowed the Government to prove that Guia-Lopez and Romero conspired "***with each other***."  But Appellant's argument ignores the language and conjunctive nature of the indictment.  *See Miller*, 471 U.S. at 136; *see also*, *United States v. Hoeffner*, 626 F.3d 857, 864 (5th Cir. 2010) (determining charges plead conjunctively in the indictment could be proved in the disjunctive).

No. 22-50234

*Sanders* reinforces our opinion. In *Sanders*, we interpreted the indictment to require the defendant to know the victims were minors based on the plain language of the indictment. 966 F.3d at 406–07 (considering how an "objective reader" would understand the indictment). Here, an objective reader would understand the indictment to include an allegation that Guia-Lopez conspired with Romero. The plain language shows the indictment includes conjunctive charges that would allow the government to prove its case in the disjunctive by showing that Guia-Lopez conspired with Romero, who was known to the grand jury, or with others unknown to the grand jury. Although the language of the indictment and the jury instructions is not identical here, the jury instructions did not broaden or constructively amend the indictment.

In *Sanders* we also considered how indictments with similar language had been interpreted. *Id.* Given the language of the indictment and the Tenth Circuit's interpretation of a similar indictment in *Davis*, Appellant's proposed interpretation does not reflect how an "objective reader" would understand the charge at issue in this appeal. *See Davis*, 995 F.3d at 1167. In *Davis*, the indictment read:

> From as early as in or about June 2018 to the date of this [i]ndictment, in the Northern District of Oklahoma and elsewhere, the defendants, AMY LEE DAVIS, CARLOS BANEGAS, and CINDY DAVIS, ***together and with others*** known and unknown to the [g]rand [j]ury, did willfully, knowingly, and intentionally combine, conspire, confederate, and agree, ***each with the other***, to commit offenses against the United States as follows . . . .

*Id.* at 1165 (alterations in original) (emphasis added). In *Davis*, the defendant-appellant argued that the jury charge broadened the indictment because the indictment limited the scope of the alleged conspiracy by specifically naming the codefendants. *Id.* at 1167. There, the Tenth Circuit determined that the

6

No. 22-50234

language of the indictment charged in the conjunctive but "the government could prove its case in the disjunctive by showing that [the defendant-appellant] conspired with [at least one of the defendant-appellant's codefendants at trial] *or* with another individual or individuals." *Id.* (emphasis in original).

Guia-Lopez argues *Davis* is inapplicable here because the indictment in *Davis* expressly charged that the defendants conspired "each with the other," whereas here the indictment does not include such language. But this ignores the difference in the plain language of the indictment here and the indictment in *Davis.* The term "each with the other" was important in *Davis* because the indictment's use of the word "together" modified the indictment such that the codefendants were excluded from the term "others known . . . to the [g]rand [j]ury." *See* 995 F.3d at 1165. Here, the term "with others known. . . to the Grand Jury" is less limiting than the language of *Davis* because the language of the indictment does not group Guia-Lopez and Romero "together."

For these reasons, there was no plain error because the jury instructions were consistent with the plain language of the indictment.[1]

## D. B. The Denial of the Motion to Suppress the Contents of Guia-Lopez's Cellphone is Affirmed

A central dispute between the parties is whether the district court erred in denying Guia-Lopez's motion to suppress the contents of his

---

[1] Even if the variance between the indictment and the jury instructions had been an error, such error would not have substantially affected Guia-Lopez's rights because there was no material variance between the indictment and the evidence at trial that Guia-Lopez conspired with others known or unknown to the grand jury (*e.g.*, "Cruz" and/or the "guide"). *See United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010).

No. 22-50234

cellphone. We determine the district court did not err in its factual findings and affirm the district court's ruling.

This Court reviews factual findings for clear error and legal conclusions *de novo* when considering an appeal of the denial of a motion to suppress. *United States v. Coulter*, 41 F.4th 451, 456 (5th Cir. 2022). During such a review, we evaluate "evidence in the light most favorable to the party that prevailed in the district court" and will "uphold the district court's ruling on the motion if there is any reasonable view of the evidence to support it." *Id.* (cleaned up).

Guia-Lopez's appeal primarily argues the district court erred in denying his motion to suppress because the "fruits of the poisonous tree"—the text messages found on his cellphone after the Fifth Amendment violation—do not comprise physical evidence but are instead testimonial in nature.[2] Guia-Lopez argues that the text messages are testimonial and should have been suppressed because they contain incriminating information, such as evidence tending to prove Guia-Lopez owned the cellphone and authored messages therein.

The Government does not challenge the district court's finding that Guia-Lopez was subject to custodial interrogation at the time he provided consent and his passcode. The Government instead argues the evidence was admissible as the "physical fruit" of a voluntary, uncoerced statement. The Government argues that the text messages are admissible without violating the Fifth Amendment because they are not coerced statements. *See Fisher v. United States*, 425 U.S. 391, 409 (1976); *United States v. Oloyede*, 933 F.3d

---

[2] Guia-Lopez also briefed a Fourth Amendment challenge on appeal, which we decline to consider because he waived this argument during the motion to suppress hearing before the district court.

302, 308–10 (4th Cir. 2019). The Government also argues that the text messages cannot be considered compelled testimonial evidence because the text messages were sent, received, and recorded "prior to and independent of Guia-Lopez'[s] interactions with Agent Golando or any enforcement officer." The Government additionally argues that even if Guia-Lopez's consent and provision of his passcode was testimonial, the "fruit of that *voluntary* communication" was admissible because he voluntarily consented to the search and voluntarily provided his passcode.

We address Guia-Lopez's primary argument in his opening brief first—that the text messages themselves qualify for Fifth Amendment protection. "To qualify for the Fifth Amendment privilege against self-incrimination, a communication must be (1) testimonial in character, (2) incriminating, and (3) compelled." *United States v. Velasquez*, 881 F.3d 314, 337 (5th Cir. 2018). A communication that is testimonial in character "must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Id.* (quoting *Doe v. United States*, 487 U.S. 201, 210 (1988)). But even evidence that is testimonial in character and incriminating is not subject to Fifth Amendment protections if it is not a product of government compulsion. *See id.* For example, an individual who voluntarily decides to tattoo incriminating gang-related symbols onto his body cannot claim Fifth Amendment protections for those tattoos because they are not a product of government compulsion. *Id.* at 338–39.

The text messages at issue are testimonial in nature and incriminating. But the text messages were not compelled in the sense that the Government did not compel Guia-Lopez to write, send, or record these text messages. The Fifth Amendment is not a "general protector of privacy"—it "protects against 'compelled self-incrimination, not (the disclosure of) private information.'" *Fisher*, 425 U.S. at 401 (quoting *United States v. Nobles*, 422 U.S. 225, 233 n.7 (1975)). Accordingly, Guia-Lopez's private

No. 22-50234

communications—the text messages—should not themselves be afforded Fifth Amendment protection. *See id.*

The real issues presented in this appeal—whether Guia-Lopez's consent to search and his passcode were obtained in violation of his Fifth Amendment right to remain silent and whether the text messages are the "fruits" of a constitutional violation that should be suppressed—were addressed more fully in Guia-Lopez's reply brief.[3]  Guia-Lopez's negative response to Agent Golando's invitation to talk was a sufficient invocation of his right to remain silent. *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (stating that "simple, unambiguous statements" such as an individual stating "that he did not want to talk with the police" are sufficient to invoke the "right to cut off questioning"). Accordingly, the questioning of Guia-Lopez should have ceased. *See Miranda v. Arizona*, 384 U.S. 436, 473–74 (1996).[4]

Because Guia-Lopez invoked his right to remain silent, whether his statements should be suppressed turns on whether the police "scrupulously honored" his right to cut off questioning. *Gutierrez v. Stephens*, 590 F. App'x 371, 376 (5th Cir. 2014) (per curiam) (quoting *Michigan v. Mosley*, 423 U.S.

---

[3] The failure to adequately brief an issue in an opening brief constitutes a waiver of that argument. *United States v. Fernandez*, 48 F.4th 405, 412 (5th Cir. 2022).  It is a close call whether these issues were adequately presented in Guia-Lopez's opening brief.  We exercise our discretion to address these issues on the merits because they were referenced in Guia-Lopez's opening brief and were more fully addressed in Guia-Lopez's reply in response to the Government's arguments.

[4] Guia-Lopez argues his response of "No" also invoked the right to counsel.  But invoking the right to remain silent is not equivalent to invoking the right to counsel. *See, e.g.*, *Miranda*, 384 U.S. at 473–74 (noting the difference between invoking the right to remain silent and the right to counsel).  Guia-Lopez's response did not unequivocally invoke his right to counsel. *See id.*; *see also Berghuis*, 560 U.S. at 381 ("In the context of invoking the *Miranda* right to counsel . . . a suspect must do so 'unambiguously.'").

96, 104 (1975)).  To determine whether this right was scrupulously honored, the Court considers the specific facts of each case, including

> (1) whether the suspect was advised prior to initial interrogation that he was under no obligation to answer question [sic]; (2) whether the suspect was advised of his right to remain silent prior to the reinterrogation; (3) the length of time between the two interrogations; (4) whether the second interrogation was restricted to a crime that had not been the subject of earlier interrogation; and (5) whether the suspect's first invocation of rights was honored.

*Id.* (quoting *United States v. Alvarado-Saldivar*, 62 F.3d 697, 699 (5th Cir. 1995)).  Upon review of the record, we affirm the district court's analysis of these factors.  The district court correctly applied the law to the facts to find that Guia-Lopez's right to remain silent was not scrupulously honored.

An interrogation comprises "words or actions" by the police that the "police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  Not every communication during custody seeks incriminating responses. *See id.* at 300.  Here, the "responses" sought by Agent Golando during the continued questioning were (1) Guia-Lopez's consent to search and (2) the password.

Guia-Lopez asserts that asking for consent to search his cellphone comprised an interrogation because Agent Golando knew there would be incriminating information on Guia-Lopez's cellphone.  But we have repeatedly determined asking for consent to search a mobile phone does not seek testimonial evidence as defined by the Fifth Amendment. *See, e.g.*, *United States v. Venegas*, 594 F. App'x 822, 826–27 (5th Cir. 2014) (finding a "statement granting 'consent to a search . . . is neither testimonial nor communicative in the Fifth Amendment sense'").  Accordingly, the district court appropriately denied Guia-Lopez's motion to suppress Guia-Lopez's

consent. Using the same reasoning, the district court was correct to suppress the passcode because asking Guia-Lopez to write down his password was a Fifth Amendment violation because this request was likely to, and did, result in testimonial evidence that implicitly showed Guia-Lopez's ownership of the phone.

Suppression of a testimonial statement obtained in violation of the Fifth Amendment can alone be a sufficient remedy, even when that statement leads to additional evidence. *See United States v. Gonzalez-Garcia*, 708 F.3d 682, 687 (5th Cir. 2013) (discussing *United States v. Green*, 272 F.3d 748 (5th Cir. 2001), which suppressed statements obtained in violation of the Fifth Amendment but did not go so far as to state the "fruit" of those statements—firearms—should be suppressed). But Guia-Lopez argues that the constitutional violation here makes the text messages inadmissible fruits of the poisonous tree. The Government relies on *Patane* to show admissibility, arguing the Fifth Amendment's Self-Incrimination Clause "cannot be violated by the introduction of nontestimonial evidence obtained as a result of *voluntary* statements." *United States v. Patane*, 542 U.S. 630, 637 (2004) (plurality opinion) (emphasis added).

Guia-Lopez does not argue he was coerced, but the possibility of coercion is present here because questioning continued after he invoked his right to remain silent. "To permit the continuation of custodial interrogation after a momentary cessation" would allow police "to undermine the will of the person being questioned." *Mosley*, 423 U.S. at 102; *Michigan v. Tucker*, 417 U.S. 433, 448 (1974) ("Cases which involve the Self-Incrimination Clause must, by definition, involve an element of coercion, since the Clause provides only that a person shall not be compelled to give evidence against himself."). *Miranda* violations are distinguishable from "actual violations of the Due Process Clause or the Self–Incrimination Clause," which apply the "fruit of the poisonous tree" doctrine as a deterrence. *See Patane*, 542 U.S.

at 642; *see also id.* at 631 ("[T]he [Self-Incrimination] Clause contains its own exclusionary rule that automatically protects those subjected to coercive police interrogations from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial.").

When a constitutional violation occurs, "[t]he exclusionary rule reaches not only the evidence uncovered as a direct result of the violation, but also evidence indirectly derived from it—so-called 'fruit of the poisonous tree.'" *United States v. Mendez*, 885 F.3d 899, 909 (5th Cir. 2018). But the exclusionary rule applies only "where its deterrence benefits outweigh its substantial social costs." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). Thus, the exclusionary rule considers the reliability of the evidence, whether the evidence was obtained from severe pressures, and whether suppression is an appropriate sanction. *See id.*; *see also Tucker*, 417 U.S. at 448–49 (finding suppression inappropriate because there was no evidence of "severe pressures," nor was there a fact issue as to whether the evidence itself was untrustworthy).

Here, the deterrence benefits would not outweigh the substantial social costs of suppressing the text messages. The district court correctly found the text messages admissible despite the Fifth Amendment violation because Guia-Lopez provided his consent and passcode based on his free and rational choice and not because of offensive coercive tactics. *See Tucker*, 417 U.S. at 448–49 (discussing offensive coercive tactics ranging from third-degree torture, prolonged isolation and "endless" interrogations). Even though Agent Golando violated Guia-Lopez's Fifth Amendment right, Agent Golando mitigated any coercion present from that violation by offering renewed warnings about Guia-Lopez's right to consent. As discussed, the trustworthiness of the content of these messages is not in question because the text messages were not the result of government coercion. Accordingly, suppressing these text messages does not serve a valid or useful purpose. *See*

*id.* at 446 ("[T]he law . . . cannot realistically require that policemen investigating serious crimes make no errors whatsoever. . . . Before we penalize police error, therefore, we must consider whether the sanction serves a valid and useful purpose.").

Moreover, knowledge of and access to these text messages was not an "exploitation" of the alleged constitutional violations. *Nix v. Williams*, 467 U.S. 431, 442 (1984) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). At the time of the alleged constitutional violations, Agent Golando had already found Guia-Lopez's cellphone and interviewed Romero. Guia-Lopez admits Agent Golando "knew that there would be incriminating information on [Guia-Lopez's] phone before he . . . interviewed [Guia-Lopez]." In addition, the Government proffered evidence that even if it had not obtained the password, it would have discovered these text messages inevitably using "GrayKey" or "Cellebrite."[5] Accordingly, exclusion of these text messages, which Agent Golando knew about from an independent source and would have eventually been discovered, "would have 'add[ed] nothing' to either the integrity or fairness of [Guia-Lopez's] criminal trial." *Nix*, 467 U.S. at 446.

Accordingly, the district court did not err in admitting the contents of the text messages.

## E. C. Admission of Agent Juarez's Opinion Testimony Was Not Improper

Guia-Lopez further argues the district court abused its discretion by allowing Agent Juarez to testify about WhatsApp exchanges that occurred

---

[5] Although Agent Golando admitted that using GrayKey is "not guaranteed" the Government showed Cellebrite software was eventually able to extract the contents of Guia-Lopez's cellphone.

between February 18, 2021, and February 28, 2021. Guia-Lopez first argues Agent Juarez improperly opined on the ultimate issue and offered improper lay opinion testimony. In addition, Guia-Lopez argues Agent Juarez's testimony about messages exchanged prior to the February 28, 2021, incident prejudicially conflated the charged acts with events that occurred before that, in violation of Federal Rule of Evidence 403. We determine there was no abuse of discretion and affirm the district court's ruling.

The conversations between Guia-Lopez and "Cruz" were contained in Government's Exhibit 20C, which was admitted without objection. Agent Juarez read these texts into the record and was then asked for his conclusion based on his "training and experience." Agent Juarez testified:

> I arrived at the conclusion that Cruz is the person that was directing the smuggling attempt. And he was providing instructions. And you can follow it for ten days from February 18th to the day he was arrested on February 28th where he's providing instructions, directions on where to transport, how much to charge for each individual, when to start and when to end as far as his movements go.

Guia-Lopez objected to this testimony on the ground that it went to the "ultimate issue." The district court overruled this objection because the testimony was based on Agent Juarez's "training and experience . . . ." Guia-Lopez also preserved Rule 403 objections to this testimony to the extent Agent Juarez discussed previous events. The district court overruled the Rule 403 objection and, per Rule 404(b), provided a limiting instruction that the jury could only consider the other acts to determine Defendant's state of mind, motive, intent, or knowledge.

The Government followed a similar strategy with Government's Exhibit 20D, which comprised a series of text exchanges between Guia-

Lopez and other parties on February 28, 2021. After this series of text messages was read into the record, Agent Juarez testified:

> Q. Based on your training and experience and your investigation in this case, what did you conclude that this conversation was about?
>
> A. This is the person in the group that might be the guide that is coordinating with the Defendant.

Guia-Lopez alleges he did not lodge a contemporaneous objection to this testimony because "the trial judge had already ruled that Agent Juarez could give opinion testimony on the meaning of the text exchanges." But this distorts the objection made by Guia-Lopez. Although Guia-Lopez is correct that he need not repeat his "ultimate issue" objection because it was overruled,[6] Guia-Lopez's previous objection was limited to the "ultimate issue." At trial, Guia-Lopez failed to raise the objection he now argues—that Agent Juarez's testimony was improper lay opinion because of his lack of "extensive" experience in this case.

We review Guia-Lopez's "ultimate issue" and Rule 403 arguments for an abuse of discretion, subject to harmless error. *See United States v. Cowards*, 24 F.4th 409, 411 (5th Cir. 2022) ("Properly preserved evidentiary rulings are reviewed for an abuse of discretion."). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011) (quoting *United States v. Yanez Sosa*, 513 F.3d 194,

---

[6] Renewing the "ultimate issue" objection after the trial judge had made a ruling on a nearly identical question related to nearly identical evidence would only serve to "be a needless provocation to the trial judge, not to mention a distracting interruption during the trial." *United States v. Lara*, 23 F.4th 459, 474 (5th Cir.), *cert. denied*, 142 S. Ct. 2790 (2022) (citations omitted).

200 (5th Cir. 2008)).  An evidentiary "error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict."  *United States v. Spivey*, 506 F. App'x 332, 333 (5th Cir. 2013) (quoting *United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998)).

To determine the admissibility of the pre–February 28, 2021, messages under Rule 403 we apply a two-part test: (1) "the extrinsic offense evidence is relevant to an issue other than the defendant's character," and (2) "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403."  *United States v. Ortega*, 478 F. App'x 871, 874–75 (5th Cir. 2012) (alteration in original) (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978)).

Guia-Lopez acknowledges this evidence of his prior acts is probative of motive and intent.  Accordingly, the first part of the test is easily satisfied. *See id.* at 875 (finding text messages sent after charged act were relevant because they supported an inference of knowledge of illegal narcotics).

Guia-Lopez instead focuses on the second part of the test, arguing the probative value of the evidence of other acts is substantially outweighed by prejudice because Agent Juarez's testimony made it impossible for the jurors to separate the charged offense from previous offenses.  Upon review of the evidence and testimony in question, we disagree.  Agent Juarez's testimony was based on dated text messages that would allow a juror to separate past events from the charged events easily.  Moreover, the district court took the additional cautionary measure of providing the jury with a limiting instruction that explicitly stated as follows:

> You must not consider Defendant's other acts in deciding if the Defendant's committed the acts charged in this indictment. You may however consider this evidence for other limited purposes . . . [such as] whether the Defendant had the state of

mind, motive, intent, or knowledge necessary to commit the crime charged in the indictment.

For these reasons, the prejudicial effect of these text messages did not substantially outweigh their probative value and the district court did not abuse its discretion by admitting the evidence under Rule 404(b).

Guia-Lopez also argues Agent Juarez offered improper opinion testimony as to the ultimate issue of Guia-Lopez's state of mind. The Government responds that the first contested opinion does not go to Guia-Lopez's state of mind but instead explained who Cruz was and how the Government believed Cruz was involved. The second contested opinion likewise explained who the Government believed Guia-Lopez was communicating with on February 28, 2021. Guia-Lopez argues that Agent Juarez usurped the jury's role because he proffered opinions based on text messages that used simple, common words.

Guia-Lopez cites *United States v. Hill* for the proposition that the type of opinion offered by Agent Juarez should have been admissible only to explain the meaning of code words. *See* 63 F.4th 335, 356 (5th Cir. 2023). But even *Hill* discusses precedent that an investigating agent may explain "the relationships between the people the agent is investigating." *Id.* (quoting *United States v. Haines*, 803 F.3d 713, 729 (5th Cir. 2015)). Here, Agent Juarez's testimony aided the jury by explaining with whom the Government believed Guia-Lopez was communicating in these text messages—a "guide" and "the person directing the smuggling attempt"— not Guia-Lopez's state of mind. While Agent Juarez arguably should have avoided use of the word "smuggling," there was no error here because Agent Juarez never directly commented on Guia-Lopez's state of mind. *See United States v. Dvorin*, 817 F.3d 438, 448 (5th Cir. 2016) (finding the use of terms like "fraud," "fraudulent checks," and "conspiracy" were not errors

because the testifying agent did not comment on the defendant's state of mind).

Finally, Guia-Lopez also offers a new argument that Agent Juarez's testimony was improper lay opinion because he did not have "extensive involvement" in investigating the alleged conspiracy. As mentioned above, Guia-Lopez did not preserve this objection at trial.

"Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if under any circumstances, that can be done." *Colonial Refrigerated Transp., Inc. v. Mitchell,* 403 F.2d 541, 552 (5th Cir. 1968) (quoting *Noonan v. Caledonia Gold Mining Co.*, 121 U.S. 393, 400 (1887)). "It is fundamental that where an objection is specific it is deemed to be limited to the ground or grounds specified and it does not cover others not specified." *Id.* (quoting *Knight v. Loveman, Joseph & Loeb, Inc.*, 217 F.2d 717, 719 (5th Cir. 1954)). Guia-Lopez's "ultimate issue" objection did not disclose an argument that Agent Juarez was not qualified to offer the testimony at issue based on his lack of involvement in the investigation. It was Guia-Lopez's burden to preserve this issue for review by providing the district court an opportunity to correct or mitigate this perceived error. *See United States v. Gutierrez-Ramirez*, 405 F.3d 352, 355 (5th Cir. 2005).

Accordingly, we perform a plain-error review of Guia-Lopez's "extensive involvement" argument because Guia-Lopez failed to make this objection at trial. Under plain-error review, the appellant must show that: "(1) there was an error; (2) the error was clear or obvious; (3) the error affected his or her substantial rights; and (4) the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings such that we

should exercise our discretion to reverse." *Lara*, 23 F.4th at 475 (quoting *United States v. Oti*, 872 F.3d 678, 690 (5th Cir. 2017)).

Guia-Lopez argues that Agent Juarez's involvement in the investigation was limited because he had only been the case agent for two weeks. In fairness, two weeks is a short time. But there was no clear error here. Agent Juarez, who has been a special agent with Homeland Security since 2008, became the case agent sometime after Agent Golando was transferred to another location out of state. Agent Juarez was intimately familiar with these messages: he performed the forensic examination of Guia-Lopez's phone and translated the contested messages from Spanish to English. Moreover, Agent Juarez interviewed Romero, Guia-Lopez's codefendant. Based on the simplicity of the evidence before him, including Romero's testimony, the contents of the phone and the details of Guia-Lopez's arrest, it is reasonable that a seasoned special agent would need no more than a short period of time to investigate and form an opinion based on his training and experience. Thus, there was no plain error here.[7]

For these reasons, we affirm the district court's admission of these text messages and Agent Juarez's testimony.

## F. D. Government's Exhibit 10 Did Not Violate the Confrontation Clause

Guia-Lopez also argues Government's Exhibit 10, a redacted version of the Form G166F "Report of Investigation," violates the Confrontation Clause, contains hearsay, and impermissibly usurped the role of the jury by

---

[7] Moreover, even if Agent Juarez's testimony had introduced some error, such an error would be harmless because his testimony was cumulative of other testimony in the record, such as Agent Golando's and Romero's testimony as well as the text messages themselves.

presenting prejudicial conclusory statements. We review the admission of this form for plain error because Government's Exhibit 10 was admitted without objection. We determine there was no error and affirm the district court's ruling.

First, Guia-Lopez argues that the admission of this exhibit violated the Confrontation Clause because the Government used the custodian of records, Agent Lujan, to admit the exhibit rather than the drafter of the report, Agent Brown. Guia-Lopez argues the Government "purposefully avoided introducing Exhibit 10 through [Agent] Brown," who had testified earlier, to "effectively deprive[]" Guia-Lopez of an opportunity to cross-examine Agent Brown about the report. The Government argues that Agent Brown testified at trial and that Guia-Lopez made no effort to recall him after the admission of Government's Exhibit 10.

Allowing the custodian of records to sponsor this exhibit was not plain error. Form G-166F is a public record that was not created for the purpose of establishing or proving some fact at trial. *See United States v. Noria*, 945 F.3d 847, 852 (5th Cir. 2019). Agent Lujan testified that the form is kept in the ordinary course of business, at or reasonably near the time of the event, by an employee with actual knowledge—in this case, Agent Brown. Thus, the unredacted portions of the G-166F form are not testimonial because they were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Id.* (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)). Moreover, most of the information contested by Guia-Lopez comprises biographical information, such as the identities of certain individuals, their citizenship, and their

birthplace, which further comprises non-testimonial information that does not violate the Confrontation Clause. *See id.* at 850.[8]

To the extent that Guia-Lopez argues Agent Brown was the unavailable declarant, there was no violation of the Confrontation Clause. Guia-Lopez admits "the record clearly establishes that [Agent] Ryland Brown, the author of G166, was available to testify and did testify." Guia-Lopez proffers no argument showing Agent Brown was unavailable and does not argue he could not have recalled Agent Brown after Government's Exhibit 10 was admitted.

Guia-Lopez also challenges the report's identification of (i) Guia-Lopez as a principal in a "failed 2 on 6 smuggling attempt"; (ii) the destination of Odessa; (iii) the fact that the arrests occurred ten miles north of Presidio, Texas; and (iv) the use of the word "SMUGGLED" with regard to the six individuals named on pages two and three of the exhibit. Guia-Lopez alleges each of these facts could only be ascertained through hearsay and argues the exhibit and Agent Lujan's repeated references to "smuggling" were highly prejudicial. Guia-Lopez fails to persuasively argue that the location of the arrest and the names and citizenship of the individuals in the vehicle constitute hearsay. Evidence was presented at trial that showed such information was ascertainable without relying on hearsay.

Guia-Lopez is correct, however, that Agent Brown's report may contain hearsay with respect to the fact that the crossing took place at Fort Leaton. Although it does not appear that cumulative evidence that the crossing took place at Fort Leaton was introduced during trial, evidence was introduced to show an illegal crossing took place. Thus, the introduction of

_____

[8] At trial, Guia-Lopez's counsel admitted that the Government's Exhibit 10 is arguably a business form and "it would be a hard press for an objection on that."

the exact location of the alleged crossing was not prejudicial and did not provide evidence that affected Guia-Lopez's ultimate conviction. *See United States v. Perry*, 35 F.4th 293, 336 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 463 (2022), *and cert. denied sub nom. Peters v. United States*, 143 S. Ct. 462 (2022), *and cert. denied sub nom. Owney v. United States*, 143 S. Ct. 602 (2023), *and cert. denied sub nom. Neville v. United States*, 143 S. Ct. 603 (2023) (determining possible hearsay violations were harmless because even if the alleged hearsay evidence had not been admitted the prosecution had ample evidence of conspiracy).

For these reasons, there was no plain error in the admission of Government's Exhibit 10.

## G.  E. Guia-Lopez's Due Process Was Not Affected by Cumulative Errors

The district court did not commit reversible error in its resolution of any of the issues presented in this case. Accordingly, "there are no errors that we could aggregate to find cumulative error." *United States v. Herman*, 997 F.3d 251, 275 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 787 (2022) (quoting *United States v. Eghobor*, 812, F.3d 352, 361 (5th Cir. 2015)).

## Conclusion

For the foregoing reasons, we AFFIRM the district court's order denying Guia-Lopez's motion to suppress. We further determine Guia-Lopez is not entitled to a new trial because there was no reversible error.